# IN THE COURT OF APPEALS OF IOWA

No. 15-1766
Filed February 7, 2018

**JEFFREY ANDERSON,**
     Plaintiff-Appellant,

**vs.**

**ANDERSON TOOLING, INC.,**
**DEAN E. ANDERSON, and**
**CAROL A. ANDERSON,**
     Defendants-Appellees.

_____

**ANDERSON TOOLING, INC.,**
     Plaintiff-Appellee,

**vs.**

**LORI J. ANDERSON and**
**FABRICATION AND**
**CONSTRUCTION SERVICES, INC.,**
     Defendants-Appellants.

_____

        Appeal from the Iowa District Court for Jefferson County, Myron L. Gookin,

Judge.

        Appellants appeal from adverse parts of the jury's verdicts and the district

court's denial of their motion for a new trial in this civil action.  **AFFIRMED IN**

**PART, REVERSED IN PART, AND REMANDED.**

        Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellants.

        Steven E. Ballard and Abigail L. Brown of Leff Law Firm, L.L.P., Iowa City,

for appellees.

        Heard by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Judge.**

Appellants Jeffrey Anderson, his wife Lori Anderson, and their business Fabrication and Construction Services, Inc. appeal adverse parts of the jury's verdicts found in favor of Anderson Tooling, Inc. and its owners, Dean and Carol Anderson. Appellants challenge several aspects of the jury's verdicts and the court's denial of their motion for a new trial, among other things. We affirm in part, reverse in part, and remand.

### I. Background Facts and Proceedings.

Dean Anderson and Jeff Anderson are brothers. Dean is married to Carol and Jeff to Lori. In or about 1996, Dean and Carol started their business, Anderson Tooling, Inc., also called ATI for short. ATI has many facets, but its primary focus is "rigging"—moving large and heavy manufacturing machines around the country. The company does more than just move machinery, it also provides turnkey machine installation. ATI also operates what is essentially a salvage yard for big, unwanted manufacturing machinery and parts. Unlike many of its competitors, if a client needs a big machine removed and no longer wants it, ATI may accept the machinery as a portion of its compensation for the machine's removal.

In 2005, Dean asked Jeff to come work for ATI. ATI was in need of organization—particularly with respect to its bookkeeping—and Jeff, who had a master's degree in business administration, had experience managing manufacturing facilities. Jeff had also performed some consulting work for ATI in the past. Dean, Carol, Jeff, and Lori met at Jeff and Lori's home to talk about details of Jeff's employment. Jeff took notes of the conversation in a note book.

Jeff's and Dean's initials appear on the first page of the notes.[1]  The notes indicate a base salary of $52,000 and provide:

% of Profit

20% up to $200,K

30% over 200,K

Payout every 6 n

The notes do not define profit or otherwise explain the use of the word.

Jeff began working for ATI.   Lori also began working for ATI as a bookkeeper.  Jeff worked for ATI until Dean fired him in 2011.

Jeff subsequently sued ATI, Dean, and Carol, asserting four claims: violation of Iowa Wage Payment Collection Law, breach of contract, tortious discharge, and interference with contractual relations.   ATI, Dean, and Carol answered, asserted affirmative defenses, and made counterclaims against Jeff for conversion, intentional interference with contracts, interference with a prospective business advantage, breach of fiduciary duty, and misappropriation of trade secrets.   ATI then sued Jeff's wife Lori and Jeff's business Fabrication & Construction Services, Inc., also called "FabCon," asserting claims of breach of fiduciary duty by Lori, conversion, intentional interference with contracts, interference with prospective business advantage, and conspiracy.  The lawsuits were consolidated for trial.

A jury trial commenced May 13, 2015.  Differing accounts of events leading to Jeff's firing were given by Jeff and Dean, among others.  Jeff claimed ATI, by way of Dean and Carol, concealed profits to keep from having to pay Jeff a percentage of that profit.  Jeff asserted that when he called Dean and Carol out on

---

[1] Both Dean and Carol deny that Dean initialed the notes.

this, they fired him rather than paid him, in breach of his contract and Iowa law. Conversely, Dean and Carol claimed Jeff was fired for mismanaging ATI and taking money from ATI he was not due. They also asserted he gave ATI's customer list and rate information to FabCon, Jeff's business, which FabCon, Jeff, and Lori used to compete with ATI and later sold to another competitor. After hearing almost two weeks of testimony and receiving over one hundred and sixty exhibits, the matter was submitted to the jury on June 3, 2015. The jury was given two verdict forms with some sixty-eight special interrogatories, along with the court's instructions. The first verdict form concerned Jeff's claims against ATI, Dean, and Carol. With respect to Jeff's claim that ATI violated the Iowa Wage Payment Collection Law, the jury found ATI did not owe Jeff for unpaid profit-sharing or for accrued vacation. On Jeff's breach-of-contract and intentional-interference-with-a-contract claims, the jury found Jeff did not have a contract with ATI with which to breach or interfere. However, the jury did find Jeff was an employee of ATI and was discharged by ATI for pursuing unpaid wages, causing Jeff damages. On the line for "lost earnings from discharge to present," the foreperson wrote, "$52,000 + 37,387.01 = 89,387." The jury also awarded Jeff $5000 for past emotional-distress damages on the claim. The jury found ATI owed Jeff money, but that neither Dean nor Carol abused the corporate privilege. Finally, the jury awarded Jeff $52,000 in punitive damages against ATI, Dean, and Carol.

The second verdict form concerned ATI's claims against Jeff, Lori, and FabCon. The jury found no conversion of ATI's property by Jeff, Lori, or FabCon. However, the jury found ATI had prospective business relationships with which Jeff

intentionally and improperly interfered to ATI's detriment and caused ATI damages of $336,072.54. Though the jury found that both Lori and FabCon knew of ATI's prospective relationships, the jury found only FabCon intentionally and improperly interfered with the potential relationships, but that the interference did not cause ATI not to enter into any of the prospective relationships. Additionally, the jury found no breach of fiduciary duty by Lori, but it found Jeff breached his fiduciary duty to ATI and caused ATI damages of $436,225.18. The jury also found Jeff misappropriated ATI's trade secrets, but the misappropriation did not cause ATI damages. On ATI's conspiracy claim, the jury answered as follows:

**X. Conspiracy**

**Question No. 38:** Did Jeffery Anderson commit any of the wrongs of conversion, interference with a prospective business advantage, breach of fiduciary duty, or misappropriation of trade secrets?

Answer "yes" or "no."

ANSWER: _Yes_

[If your answer is "no," do not answer any further questions in Section X; instead, go to Question No. 42]

**Question No. 39:** Did Lori Anderson and Fabrication and Construction Services, Inc. participate in a conspiracy with Jeffery Anderson to appropriate funds and projects belonging to Anderson Tooling, Inc.

Answer "yes" or "no."

ANSWER: _Yes_

The jury found the conduct of Jeff, Lori, and FabCon constituted willful and wanton disregard of the rights of ATI, Dean, and Carol, but it awarded no punitive damages. Lastly, the jury found the conduct of Jeff, Lori, and FabCon was not directed specifically at ATI, Dean, and Carol.

Thereafter, the court entered a judgment in favor of Jeff against ATI of $94,387.10 in compensatory damages plus $52,000 in in punitive damages. The court also entered judgment in favor of ATI against Jeff of $772,297.72 in compensatory damages. Several post-trial motions were subsequently filed, including motions by Jeff for judgment notwithstanding the verdicts and for a new trial. ATI filed an Iowa Rule of Civil Procedure 1.904(2) motion to enlarge, amend, or modify the court's judgment entry, as well as a motion for a judgment notwithstanding the verdict. It also filed a motion requesting that the judgment on the verdict against Jeff be entered against Jeff, Lori, and FabCon jointly and severally. Following a hearing on all of the motions, but for a few items, the court overruled and denied the parties' post-trial motions. Relevant here, the court amended and modified its judgment entry to provide judgment in favor of ATI and against Jeff, Lori, and FabCon, both jointly and severally, in the amount of $772,297.72, based upon the jury's finding that Lori and FabCon conspired with Jeff in his wrongful conduct.

Jeff, Lori, and FabCon appeal, challenging the sufficiency of the evidence to support some of the jury's verdicts against them. They also assert the jury's verdict was inconsistent in several respects, entitling them a new trial or a judgment notwithstanding the verdict. Finally, they argue the court erred in sustaining ATI's rule 1.904(2) motion to add Lori and FabCon to the judgment as jointly and severally liable for the judgment amount.

## II. Scope and Standard of Review.

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012).

Similarly, our review of the denial of a motion notwithstanding the verdict "is limited to those grounds raised in the directed verdict motion." *Pavone v. Kirke*, 801 N.W.2d 477, 487 (Iowa 2011). If a motion is based upon a legal question, such as whether a verdict is inconsistent, we review for correction of errors at law. *See id.* at 496. But, if a motion is based on a discretionary ground, our review is for an abuse of discretion. *See id.* at 487.

### III. Discussion.

### A. Sufficiency of Evidence.

The district court should grant a motion for a directed verdict—or a motion notwithstanding the verdict based upon the earlier motion for a directed verdict— if substantial evidence does not support the elements of the claim. *See id.* Additionally, the trial court can grant a new trial if the jury's verdict "is not sustained by sufficient evidence, or is contrary to law." Iowa R. Civ. P. 1.1004(6). On appeal, the record evidence is viewed in the light most favorable to the nonmoving party, taking "into consideration all reasonable inferences that could be fairly made by the jury." *Pavone*, 801 N.W.2d. at 487. "Substantial evidence" exists if "reasonable minds would accept the evidence as adequate to reach the same findings. Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury." *Id.* (citations omitted). Consequently, if the issue was properly raised before the district court, we must determine if the court correctly found substantial evidence existed to submit the issue to the jury. *See id.* "Ultimately, 'we are reluctant to interfere with a jury verdict' or the district court's consideration of a motion for new trial made in response to the verdict." *Fry*, 818 N.W.2d at 128 (citations omitted). Likewise, appellate courts are loath to

interfere with the jury's assessment of damages, as such assessments are traditionally in the jury's purview.  *See Sallis v. Lamansky*, 420 N.W.2d 795, 799 (Iowa 1988).

### 1. *Jury's No-Contract Finding.*

Jeff first argues the court erred in not granting his motion for a new trial because the jury's interrogatory answer finding that he did not have a contract of employment with ATI was not supported by and directly contrary to the evidence at trial.  He submits that "[a]ll parties admitted there was an agreement; their only disagreement was as to the terms of the contract."

All employment relationships are contractual in nature.  Even at-will employment is contractual.  *See Godfrey v. State*, 898 N.W.2d 844, 874 (Iowa 2017) (explaining "employment contracts are presumed to be at-will under Iowa law"); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 281 (Iowa 1995) (observing "the doctrine of employment at-will is merely a gap-filler, a judicially created presumption utilized when parties to an employment contract are silent as to duration"); *Toney v. Casey's Gen'l Stores, Inc.*, 372 N.W.2d 220, 222 (Iowa 1985) (recognizing tort of interference with a contractual relationship for an employment contract at will).  But sometimes shorthand references in the case law seem to suggest at-will employment exists "in the absence of a valid employment contract."  *See Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997); *see also Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 79 (Iowa 2001) ("The doctrine of employment-at-will, well-established in Iowa law, permits an employer or employee who is not under contract to terminate employment at any time for any lawful reason.").  In this case, the parties agreed Jeff was an

employee of ATI. It is evidence from the parties' closing arguments and the related instructions and interrogatories provided to the jury that the fighting question was not the existence of the underlying employment relationship but whether Jeff and ATI entered into a contract involving profit-sharing terms. Viewing the evidence in light favorable to ATI, we find no error in the court's denial of Jeff's motion for new trial.

The jury was instructed that a "contract is an agreement between two or more persons to do or not do something" and that the

> existence of a contract requires a meeting of the minds on the material terms. This means the parties must agree upon the same things in the same sense. You are to determine if a contract existed from the words and acts of the parties, together with all reasonable inferences you may draw from the surrounding circumstances.

*See also Schaer v. Webster Cty.*, 644 N.W.2d 327, 338 (Iowa 2002) ("For a contract to be valid, the parties must express mutual assent to the terms of the contract."). While a reasonable juror could have found Jeff's written notes to be a valid contract between Jeff and ATI regarding profit-sharing, the evidence also supports a finding to the contrary. Importantly, the notes are vague, hand-written, and, unclear as to what constituted "profits." The jury could reasonably find there was not mutual assent to the profit-sharing terms of the employment agreement and therefore no valid contract between Jeff and ATI concerning profit-sharing. Given two factual propositions where "each [is] supported by substantial evidence, the one the jury chooses stands." *Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 481 (Iowa 1997). Accordingly, we find no error in the court's denial of Jeff's motion for a new trial on this ground.

## 2. Jury's Damage Determinations.

Jeff, Lori, and FabCon also assert the jury's determination that Jeff caused substantial damages to ATI for his breach of fiduciary duty and interference was not supported by substantial evidence, and the district court erred in not granting them a new trial on this ground. Upon our review, we disagree.

Jeff, Lori, and FabCon complain that the jury did not explain how the damages it awarded was calculated, but they neither asked that the jury make such findings on the verdict form, nor did they raise the issue after the jury's verdict but before the jury was dismissed. In fact, after the jury returned the verdicts, counsel for ATI, Dean, and Carol informed the court "we agree that the verdict forms do not contain procedural irregularities and that the jury should be released." Counsel for Jeff, Lori, and FabCon also advised the court "there are no irregularities in the verdict forms that cannot be addressed with post trial motions and the jury should be released." Moreover, there is sufficient evidence in the record from which the jury could have found ATI sustained damages in the amounts the jury determined.

At trial, ATI's expert, a certified fraud examiner, testified that she completed an examination of ATI's bank and accounting records, and she formed an opinion that Jeff breached his fiduciary duty to ATI and caused ATI damages of over 1.4 million dollars. Additionally, evidence was presented showing ATI had prospective business relationships with several vendors with whom Jeff interfered and directed business to FabCon rather than ATI, along with invoices for business well over the amount found by the jury. Based upon that evidence, reasonable minds could accept the evidence as adequate to reach the same findings. Substantial evidence

supports the jury's damage determinations. We therefore find no error in the court's declination to grant the plaintiffs a new trial, and we affirm on this issue.

### B. Inconsistent Verdicts.

Whether a verdict is inconsistent is a question of law. *See Pavone*, 801 N.W.2d. at 487. A jury verdict is not inconsistent if it can be harmonized in a reasonable manner "with the jury instructions, the evidence, and inferences the jury could have drawn from that evidence." *Bryant v. Parr*, 872 N.W.2d 366, 376 (Iowa 2015). But if, "under this analysis, two answers or findings by the jury would compel the rendition of different judgments, the answers are inconsistent." *Id.* (citation omitted). A court may enter a judgment based on consistent answers but may not do so when the interrogatory answers are inconsistent. *Id.* Consequently, we would ordinarily first "determine if an inconsistency exists." *Id.*

### 1. Interference with Prospective Business Relationship.

Jeff, Lori, and FabCon assert the jury's finding that Jeff interfered with prospective business relationships of ATI is inconsistent with its finding that Jeff's conduct was not directed specifically at ATI. ATI argues Jeff, Lori, and FabCon failed to preserve error on this claim because they did not object to the verdict form and did not object to an alleged procedural irregularity before the jury was discharged. We agree.

As noted earlier in this opinion, Jeff, Lori, and FabCon did not raise the issue of inconsistent verdicts before the jury was released and, in fact, advised the court "there are no irregularities in the verdict forms that cannot be addressed with post trial motions and the jury should be released." Error-preservation rules assist in ensuring "the opposing party and the district court are alerted to an issue at a time

when corrective action can be taken or another alternative pursued," as well as preserving precious "judicial resources by avoiding proceedings that would have been rendered unnecessary had an earlier ruling on the issue been made." *Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

In their brief, Jeff, Lori, and FabCon state they preserved error when they "moved for directed verdict on this claim and filed a motion for new trial, a motion for judgment notwithstanding the verdict, and filed a timely notice of appeal." We note that a timely notice of appeal "has nothing to do with error preservation." *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court") (footnote omitted). Furthermore, the motion for new trial filed after the jury's verdict did not raise this specific issue, nor does it appear the district was court asked to address the issue,[2] nor did the district court address the issue in its ruling. We conclude Jeff, Lori, and FabCon did not properly preserve this issue for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Where error is not preserved on an issue there is nothing for an appellate court to review. *See State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995).

---

[2] We have no transcript of the post-trial hearing.

But even assuming error had preserved upon the issue, we do not find the verdicts to be inconsistent. On the interference-with-prospective-business-relationships claim, the jury found Jeff intentionally interfered with ATI's prospective relationships and caused damages of $336,072.54. However, under the punitive damages special interrogatory, the jury was asked: "Was the conduct of Jeffery Anderson, Lori Anderson and Fabrication & Construction Services, Inc. directed specifically at Anderson Tooling, Inc., Dean Anderson and Carol Anderson?" All six parties were listed in the one question. No one asked that the names be split out so that the jury could specifically address Jeff's conduct, Lori's conduct, and FabCon's conduct, individually, against each of the opposing parties, i.e., as against ATI, and Dean, and Carol, individually. Considering all the jury instructions, the evidence, and inferences the jury could have drawn from that evidence, we believe the answer asking about all three plaintiffs, combined, differentiates the question from the singular question concerning Jeff, and thus the jury's answers are not necessarily inconsistent with each other. The answers do not compel the rendition of different judgments, given the questions asked. We find no inconsistency here.

### 2. Jury's Conspiracy Determinations.

Similarly, Jeff, Lori, and FabCon argue the jury's conspiracy findings were inconsistent with the jury's other factual findings, citing the jury's determination that ATI's injury was "$0–duplication." Though the issue was raised in their post-trial motion for a new trial, there is no indication the alleged inconsistency was brought to the court's attention before the jury was instructed in the case or after the

verdicts were given but before the jury was released. We do not find this issue was preserved for appellate review.

But, even assuming it was preserved, we find no merit in the claim. The jury consistently found Jeff committed wrongdoing—interfering with ATI's prospective business relationships and breaching his fiduciary duties to ATI. The jury determined Lori and FabCon conspired with Jeff "to appropriate funds and projects belonging to [ATI]," and that ATI was damaged as a result of the conspiracy. Nevertheless, the jury awarded no damages. In reading the verdict form as a whole, we conclude the jury found that any damages resulting from the conspiracy were duplicative of the damages it already found were caused by Jeff's breach of fiduciary duty and interference. A conspiracy finding did not require a finding of any additional monetary damages to ATI. The jury recognized this by adding the word "duplication" next to its finding of zero damages to ATI as a result of the conspiracy. [3] There is no inconsistency here.

### C. Liability of Lori and FabCon.

Finally, Lori and FabCon assert the district court erred in finding them jointly and severally liable, based on the jury's conspiracy findings, for the judgment entered in favor of ATI. They take issue with the verdict form's lack of specificity as to what exactly Lori and FabCon conspired with Jeff to do, and they argue the lack of information along with the jury's award of no damages for the conspiracy means the district court erred in amending and modifying its judgment to hold Lori

---

[3] The jury was instructed, "A party cannot recover duplicate damages. Do not allow amounts awarded under one item of damage to be included in any amount awarded under another item of damage."

and FabCon jointly and severally liable for the judgments against Jeff. Ultimately, we conclude the district court erred in amending and modifying the judgment to hold Lori and FabCon jointly and severally liable for the entire judgment entered in favor of ATI and against Jeff.

"Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002). Consequently, "conspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert." *See id.*

The jury was instructed that in order for ATI to recover on its conspiracy claim, it had to prove Jeff "committed the wrongs of conversion, intentional interference with a prospective business advantage, breach of fiduciary duty, or misappropriation of trade secrets," and that Lori and FabCon "participated in a conspiracy with [Jeff] to appropriate funds and projects belonging to ATI." The jury found that Lori and FabCon participated in a conspiracy with Jeff "to appropriate funds and projects belonging to [ATI]." The only tortious wrongs the jury found Jeff to have committed were interference with ATI's prospective business relationships and his breach of fiduciary duties to ATI.

A conspiracy to appropriate funds and projects *belonging* to ATI necessarily falls outside the tort of interference with *prospective* business relationships. The jury was instructed "'prospective business relationship' means a reasonable likely business relationship of financial benefit to ATI." "Likely" does not equate to funds and projects already owned or in the possession of ATI. Therefore Jeff's tortious interference conduct cannot be the basis of a conspiracy to appropriate funds and

projects belonging to ATI.[4]  Furthermore, we note the jury specifically found that Jeff did not exercise wrongful control or dominion over property belonging to ATI.[5] We find Lori and FabCon should not be held jointly and severally liable for that part of the judgment pertaining to the jury's damage award for Jeff's intentional interference with ATI's prospective relationships.

With regard to Jeff's breach of fiduciary duty tortious conduct, the jury was instructed "a fiduciary has a duty to disclose all material facts in dealing with the other party to permit the other party to make an intelligent, knowing decision in such dealings."  Specifically, Jeff "owed a fiduciary duty of loyalty to ATI to not engage in any other service or business or to compete to the detriment of ATI," and "to act in all things wholly for the benefit of ATI."  The jury was instructed that a breach of fiduciary duty also included the "misappropriation of profits, property, business opportunities, and trade secrets of one's employer."  The instructions limited the scope of the conspiracy to the appropriation of funds and projects belonging to ATI.  The jury found that neither Jeff, Lori, nor FabCon exercised wrongful control or dominion over property belonging to ATI.  The jury found that Jeff's misappropriation of trade secrets caused no damage to ATI.  As we concluded above, Jeff's interference with prospective business relationships does not fall within the limited scope of the conspiracy.   In view of all the above, we fail to see how Jeff's breach of fiduciary duty to ATI falls within the scope of the

---

[4] The jury fund that Lori did not interfere with ATI's prospective business relationships. Although the jury found FabCon did interfere with ATI's prospective business relationships, it found that the interference did not prevent ATI from entering into any or all of the relationships.

[5] The jury also found that Lori and FabCon did not exercise wrongful control or dominion over property belonging to ATI.

conspiracy as limited by the jury instructions. We find Lori and FabCon should not be held jointly and severally liable for that part of the judgment pertaining to the jury's damage award for Jeff's breach of fiduciary duty to ATI.

Consequently, the district court erred in enlarging, amending and modifying its judgment to provide judgment in favor of ATI and against Lori and FabCon, both jointly and severally. Furthermore, the court erred in enlarging, amending, and modifying its judgment to provide that Lori and FabCon be jointly and severally liable for one-half of the court costs. We therefore reverse and remand for entry of an order consistent with this opinion. We affirm the district court in all other respects.

### IV. Conclusion.

We find that the district court should not have amended and modified its judgment to provide judgment in favor of ATI against Lori and FabCon, both jointly and severally, and should not have taxed court costs to Lori and FabCon, jointly and severally. We therefore reverse the district court in that respect and remand for entry of an order consistent with this opinion. We affirm the district court in all other respects. Court costs on appeal are assessed to Jeff.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**