# IN THE SUPREME COURT OF IOWA

No. 10–1336

Filed July 13, 2012

**ABBEY FRY**,

Appellee,

vs.

**ANDREW BLAUVELT** d/b/a **BLUEFIELD TRUST CONSTRUCTION**,

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Washington County, Joel D. Yates, Judge.

On further review, plaintiff asserts the court of appeals erred in awarding defendant a new trial. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Michael J. Moreland and Heather M. Simplot of Harrison, Moreland & Webber, P.C., Ottumwa, for appellant.

Richard S. Bordwell, and Trevaniel J. Temple of Bordwell Law Office, P.L.C., Washington, and Larry J. Brock (until withdrawal), for appellee.

**ZAGER, Justice.**

In this breach of contract case, we consider whether the district court erred in denying the defendant's motion for a new trial based on several rulings by the district court that the defendant claims materially affected his rights and denied him a fair trial. The district court refused the defendant's request to exclude exhibits disclosed by the plaintiff the day before trial in violation of the district court's pretrial scheduling order. Additionally, the district court refused the request to declare a mistrial when the plaintiff testified to certain matters in violation of the district court's stipulated ruling on a motion in limine and denied the defendant's motion for a directed verdict. The court of appeals reversed and remanded for a new trial because it concluded the district court abused its discretion in admitting the exhibits into evidence. On further review, we vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Factual and Procedural Background.

Based on the evidence produced at trial, the jury could have found the following facts. In August 2008, plaintiff, Abbey Fry (Fry), hired the defendant, Andrew Blauvelt d/b/a Bluefield Trust Construction (Bluefield), to remodel her home in Ollie, Iowa. After some negotiating, Fry and Bluefield entered into an oral contract in which Bluefield agreed to extend Fry's kitchen, add a master bedroom with a bath and closet, add a hallway, and add a garage with a basement below. The estimated cost to complete the project was $101,250. No agreement was reached as to the time of completion, although Fry wanted the project completed within six months. Bluefield broke ground on or around September 28, 2008.

Work initially proceeded at a relatively rapid pace with weekly payment applications by Bluefield showing work performed and subsequent payments by Fry. The contractual relationship between the parties began to sour in late December when the project foreman left for a month-long vacation. After the foreman left, Fry became increasingly dissatisfied with the progress of the project and eventually ordered Bluefield off the job in January 2009.

After firing Bluefield, Fry hired S.R.S. Construction to complete the project. Chad Evans, the owner of S.R.S. Construction, testified that S.R.S. Construction did some electrical work, put a doorway in, installed a window, worked on the flooring, and performed other work on the addition. Aside from the work it did perform, S.R.S. Construction submitted a bid in the amount of $24,650 which was its estimated cost to complete the addition. It also submitted another bid in the amount of $32,480 to repair the roof of the garage that was, according to Evans, defectively constructed.

Fry filed a breach of contract claim against Bluefield in April 2009. Fry claimed Bluefield failed to perform under the contract, and as a result of this failure to perform, she incurred expenses and suffered damages. Specifically, Fry sought damages for the cost to complete the project according to the original oral contract between the parties. She also sought damages as a result of construction delays she claimed were caused by Bluefield.

Prior to trial, Bluefield filed a motion in limine. The motion sought to prohibit Fry from "mentioning, discussing, or asking any witness" about an allegation of repair fraud involving one of Bluefield's projects in Mississippi. The motion also sought to exclude any evidence or testimony relating to one of Bluefield's projects located in Wellman, Iowa

involving an allegedly unhappy customer. By stipulation of the parties, the district court granted the motion.

By pretrial order, trial in this matter was set for June 29, 2010. The pretrial order also required the parties to exchange complete exhibit and witness lists no later than seven days before trial. On June 22, Fry faxed her initial exhibit list to Bluefield which listed sixteen items, many of which were designated simply as "photographs." The day before trial, Fry filed an amended exhibit list that included one hundred and eighty-three exhibits. The last eight exhibits contained fifteen photographs, none of which were previously disclosed to Bluefield. The fifteen photographs allegedly depicted a "water leak on June 1 [and 2], 2010," and a "millipede invasion on June 18, 2010," that occurred in Fry's home.

On the morning of trial, Bluefield requested the district court exclude the eight exhibits from evidence. Bluefield argued the exhibits should be excluded from evidence because Fry failed to disclose the photographs in accordance with the pretrial order. Bluefield further argued that the photographs would inflame the jury and that it needed time to consult an expert to investigate the cause of the leak and infestation. Fry's counsel responded that the photographs were not previously disclosed because the water leak and millipede problem were recent developments. He also asserted that expert testimony was unnecessary. The district court reserved judgment, and the trial began. During Fry's testimony, the district court denied Bluefield's motion to exclude the untimely disclosed exhibits. The district court explained that, although it agreed that Bluefield's concerns were "legitimate," the court thought the concerns could "adequately be addressed through

cross-examination of the plaintiff or the plaintiff's witnesses, and/or through presentation of [Bluefield's] evidence."

During recross-examination of Fry, Bluefield's attorney attempted to undermine the probative value of the photographs by calling attention to the eighteen month gap between the time Bluefield stopped working on the project and the time the water leak and millipede problems arose. The following exchange took place:

> Q.  [W]e're now 18 months after you fired Andy and you're having a problem that you're relating back to something that he did 18 months ago; is that right?  A. Because he's the one that set the wall, yes.  The wall that has a terrible leak, that's full of foam that I had to put to keep the mice from coming in in the winter for two years now.  The wall is incorrect.  Not just the door.

> Q.  Any of the problems that you've had, you haven't fixed those problems?  A.  I have no money to fix those problems.

> Q.  And that's because Andrew blew all your money? Is that right?  A.  He didn't use it where he was supposed to, and I'm pretty sure he used it on other jobs because he was behind on them jobs too.  He doesn't know how to manage money very well.

> Q.  *What's the basis of that opinion?  A.  He's filed bankruptcy many times.*

> Q. *Yeah.  All right.  A.  A lawsuit down in Mississippi on another house.  One in Wellman that's very unhappy with her job site, too.*

> Q. *Are you going to call those people to testify?  A.  I did, but you won't let them.*

(Emphasis added.)  Bluefield's attempt to undermine the value of the photographs during recross-examination thus led to the introduction of testimony that was previously held inadmissible by the district court's ruling on Bluefield's motion in limine.  On Bluefield's motion, the district court struck the improper remarks from the record and directed the jury

"not to consider those answers." Bluefield moved for a mistrial, which the district court denied.

The jury subsequently returned a verdict in Fry's favor. On July 14, 2010, Bluefield filed a motion for new trial on several grounds. Bluefield first alleged the admission of the untimely disclosed exhibits—specifically, the photographs of the water leak and millipede problem—prevented him from receiving a fair trial and affected his substantial rights. Bluefield also alleged that the court committed error when it refused to grant a mistrial after Fry violated the district court ruling on the motion in limine. Bluefield claims this violation prevented him from receiving a fair trial and thus warranted a new trial. Bluefield also argued other errors by the district court warranted a new trial. The district court denied the motion for new trial on all grounds, and Bluefield appealed.

The court of appeals reversed and remanded for a new trial. The court of appeals reasoned the district court abused its discretion in admitting the late-disclosed exhibits because the late disclosure prejudiced Bluefield's defense. The court of appeals further noted that Fry did not seek damages with respect to the water leak or millipede problem and therefore the photographs were irrelevant to the breach of contract claim. The court reasoned that the admission of the photographs prevented Bluefield from receiving a fair trial under Iowa Rule of Civil Procedure 1.1004. Fry requested further review, which we granted.

## II.  Scope of Review.

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 88 (Iowa 2002), *abrogated on*

*other grounds by Thompson v. Kaczinski*, 774 N.W.2d 829, 836 (Iowa 2009); *see also Ladeburg v. Ray*, 508 N.W.2d 694, 696 (Iowa 1993). "Ultimately, 'we are reluctant to interfere with a jury verdict' or the district court's consideration of a motion for new trial made in response to the verdict." *Estate of Long*, 656 N.W.2d at 88 (citation omitted). We review a district court's denial of a motion to exclude untimely disclosed exhibits for abuse of discretion. *Cf. Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 305 (Iowa 1998). "If the motion [for a new trial] is based on a discretionary ground such as misconduct it is reviewed for an abuse of discretion." *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011). Claims "of accident and surprise, which ordinary prudence could not have guarded against" are also reviewed for abuse of discretion. *See Vanden Berg v. Wolfe*, 196 N.W.2d 420, 422 (Iowa 1972). "We review the district court's denial of a motion for a new trial based on the claim a jury awarded excessive damages for an abuse of discretion." *WSH Props., L.L.C. v. Daniels*, 761 N.W.2d 45, 49 (Iowa 2008) (citation and internal quotation marks omitted). A district court abuses its discretion if it rests its ruling on "clearly untenable or unreasonable grounds." *Lawson v. Kurtzhals*, 792 N.W.2d 251, 258 (Iowa 2010).

Bluefield claims that a new trial was appropriate because the verdict was "not sustained by sufficient evidence" and the district court committed errors of law. *See* Iowa R. Civ. P. 1.1004(6), (8). "Because the sufficiency of the evidence presents a legal question, we review the trial court's ruling on this ground for the correction of errors of law." *Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004). In a related claim, Bluefield argues the district court committed legal error in not granting its motion for a directed verdict, a decision we

review for a correction of errors at law. *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999).

### III. Issues Presented on Appeal.

Bluefield raised eight issues on direct appeal. Bluefield first argued a new trial was warranted under Iowa Rule of Civil Procedure 1.1004(1). Under rule 1.1004(1), a new trial may be granted for an "abuse of discretion which prevented the movant from having a fair trial." Bluefield asserts a new trial was appropriate under this rule because the district court abused its discretion in admitting the untimely disclosed photographs and refusing to grant Bluefield's motion for a mistrial during Fry's testimony.

Second, Bluefield argued the district court should have granted a new trial under Iowa Rule of Civil Procedure 1.1004(2), which permits a new trial for "[m]isconduct of the jury or prevailing party." Bluefield asserts Fry engaged in misconduct by referencing Bluefield's projects in Mississippi and Wellman, Iowa in violation of the district court's order granting the motion in limine.

Third, Bluefield stated that a new trial should have been granted pursuant to Iowa Rule of Civil Procedure 1.1004(3), which allows a new trial for an "[a]ccident or surprise which ordinary prudence could not have guarded against." Bluefield argued that the untimely disclosed exhibits, and Fry's testimony regarding the Mississippi and Wellman, Iowa projects, constituted a "surprise" that "ordinary prudence could not have guarded against." Iowa R. Civ. P. 1.1004(3).

Bluefield's fourth, fifth, and sixth arguments alleged the jury verdict was excessive and reflected an award based on passion or prejudice. Bluefield relied on Iowa Rules of Civil Procedure 1.1004(4), (5) and (6) in support of this argument.

Seventh, Bluefield argued the district court made errors of law during trial, which called for a new trial under rule 1.1004(8). Bluefield asserted the district court's failure to order a mistrial, to exclude the untimely disclosed exhibits, and to exclude testimony regarding damages to the roof of Fry's garage were errors of law warranting a new trial.

Finally, Bluefield asserted the district court erred in failing to grant his motion for directed verdict at the close of Fry's case-in-chief. Bluefield asserted the jury's verdict finding Bluefield breached the contract was unsupported by the evidence. Bluefield's final argument relies on Iowa Rule of Civil Procedure 1.1003(2) and 1.1004(9).

**IV. Merits.**

**A. Photographs.** Bluefield claims the district court's decision to admit the photographs of the water leak and millipede problem prevented Bluefield from receiving a fair trial. *See id.* r. 1.1004(1). Although Bluefield is not entirely clear about how the district court abused its discretion and prevented it from having a fair trial, the crux of Bluefield's argument is it was deprived of a fair trial because the district court admitted exhibits that were untimely disclosed in violation of the pretrial order. As noted above, the pretrial order required Fry to provide Bluefield with a complete exhibit list "no later than seven (7) days prior to trial." Fry failed to comply with the pretrial order by filing an amended exhibit list, which included the previously undisclosed photographs in question, the day before trial. Bluefield's request for the exclusion of the untimely disclosed photographs was, in substance, a motion to enforce the pretrial order by appropriate sanctions under Iowa Rule of Civil Procedure 1.602(5). *See* Iowa R. Civ. P. 1.602(5) (stating a court "may make such orders . . . as are just" for a party's failure to obey a scheduling or pretrial order, including an order prohibiting introduction

of certain matters in evidence as provided in rule 1.517(2)(b)(2)). We therefore turn to the question of whether the district court's failure to enforce the pretrial order deprived Bluefield of a fair trial.

Pretrial scheduling orders serve an important function in our civil justice system. A scheduling order encourages pretrial management and assists the trial court in controlling the direction of the litigation. *See Caruso v. Pearce*, 678 S.E.2d 50, 55 (W. Va. 2009); *see also Stevenson v. Felco Indus., Inc.*, 216 P.3d 763, 769 (Mont. 2009). It has been said that the purpose of a pretrial scheduling order is to "permit orderly discovery and pretrial preparation." *In re Estate of Fahnlander*, 913 P.2d 426, 429 (Wash. Ct. App. 1996). By fixing time deadlines, a scheduling order stimulates litigants to focus on the most germane issues in the case. *See* Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendments (citing *Report of the National Commission for the Review of Antitrust Laws and Procedures* 28 (1979)); 3 James W. Moore, *Moore's Federal Practice* § 16.02, at 16–19 to 16–20 (3d ed. 2012). Time limits thus promote efficiency and reduce the amount of resources required to be invested in the litigation. Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendments. "[T]he absence of a scheduling order," observes one commentator, "can result in lack of focus, inefficiency, and delays in disposition." 3 James W. Moore, *Moore's Federal Practice* § 16.10[2], at 16-39.

The cooperation of parties during pretrial stages of litigation is essential. Judge McIllvaine observed fifty years ago that "[w]ithout the active cooperation of the trial attorneys, and their diligent preparation of the cases for pretrial, the whole purpose of pretrial will fail." John W. McIllvaine, *A District Judge's Views as to the Means of Insuring Compliance by Counsel with the Pretrial Procedures*, 29 F.R.D. 191, 408

(1961). The failure of a party to meet pretrial deadlines not only undermines the goals of the schedule, but also prejudices the other party, who is subject to the deadlines as well. *See Perry v. Sera*, 623 A.2d 1210, 1220 (D.C. 1993); *see also Barrow v. Abramowicz*, 931 A.2d 424, 431 (Del. 2007) (stating "the pretrial order is tantamount to a contract between the parties for conducting pretrial preparation"). A party's failure to comply with pretrial procedure divests the trial court's control over the administration of justice in the case and places it in the hands of recalcitrant or otherwise dilatory counsel. *See Link v. Wabash R.R.*, 291 F.2d 542, 547 (7th Cir. 1961).

To ensure our district courts have the tools to effectively manage pretrial conduct and control the conduct of the trial, we have recognized the inherent power of the district court to enforce pretrial orders by imposing sanctions. *See Rowen v. Le Mars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 646 (Iowa 1979). Our rules of civil procedure reflect this inherent power by vesting the district court with discretion to fashion appropriate sanctions for violations of pretrial orders. *See* Iowa Rs. Civ. P. 1.517(2)(*b*)(2)–(4), .602(5); *Olson*, 579 N.W.2d at 305. Although district courts have discretion in deciding whether to enforce pretrial orders, "it is incumbent upon a reviewing court to scrutinize the exercise of that discretion and to confine the exercise to reasonable limits." *Fox v. Stanley J. How & Assocs., Inc.*, 309 N.W.2d 520, 522 (Iowa Ct. App. 1981).

We conclude the district court properly denied Bluefield's motion for a new trial based on the admission of the exhibits in question. Under rule 1.1004, a district court should only grant a new trial if one of the grounds listed in the rule applies and the movant's substantial rights were materially affected. *See* Iowa R. Civ. P. 1.1004. When the asserted

ground for a new trial is that the district court abused its discretion, the movant must show the error "prevented the movant from having a fair trial." *Id.* r. 1.1004(1). Thus, in order to reverse the district court and grant Bluefield's motion for a new trial, we must not only be convinced that the district court abused its discretion by admitting the photographs, we must also be convinced that the error materially affected Bluefield's substantial rights.

Bluefield argues that the district court abused its discretion when it admitted evidence that was not turned over in accordance with the pretrial order and that this abuse of discretion prevented Bluefield from receiving a fair trial. We disagree with both claims. The district court found that Bluefield's concerns regarding the late disclosure of the evidence, and his resulting inability to investigate the photos, could "adequately be addressed through cross examination of the plaintiff or the plaintiff's witnesses, and/or through presentation of [Bluefield's] own evidence." As discussed below, this point is well-taken. The court of appeals correctly noted that Fry had time to alert Bluefield of her intention to admit evidence of a water leak and millipede infestation. However, the record does not support the conclusion that Bluefield was prejudiced by Fry's failure to include the exhibits in the first exhibit list. Bluefield argued the exclusion of the exhibits in the exhibit list impaired his ability to investigate the cause of the water leak. However, Bluefield presented testimony that Bluefield did not install the window that was shown in the controverted photographs. Bluefield clearly was able to investigate and refute this evidence of a water leak and effectively did so at trial.

Bluefield also was not prejudiced in its ability to investigate and refute the millipede infestation which occurred shortly before trial.

Bluefield presented testimony at trial that Fry was instructed not to cut any holes in the cement wall between the old and the new basement other than the small opening needed for the heating duct. This was due to the time of year and because the scheduling of the project did not call for it at that time. Because Fry could have this done at no charge, she not only had a hole cut for the heating duct but also went ahead and opened up a significant hole leading into her existing basement. Therefore, the hole leading into Fry's existing basement could not reasonably be attributed to any direct action by Bluefield. Bluefield also emphasized the significant time gap between when it was removed from the project and when these problems occurred. As the district court pointed out, while Bluefield's ability to refute evidence of the water leak and millipede problem may have been impaired, the district court also reasonably concluded the surprise suffered by Bluefield was not substantial nor did it otherwise prevent it from developing a means of impeachment. *See State v. Thompkins*, 318 N.W.2d 194, 198 (Iowa 1982) (noting ability to prepare for or investigate untimely disclosed evidence a factor to be considered in determining prejudice caused by late disclosure); *see also City of Kotzebue v. McLean*, 702 P.2d 1309, 1315 (Alaska 1985) (stating the district court is in the best position to determine credibility and reasonableness of attorney's claim of surprise by undisclosed evidence).

Even if Bluefield was surprised by the additional exhibits, it is unlikely this had any impact on the ultimate outcome of the proceedings. Fry's testimony on the water leak and millipede infestation consisted of five pages of a trial transcript which exceeded five hundred and eighty pages. In contrast, in excess of twenty-eight pages of the transcript were consumed discussing timesheets. One of the principal arguments Fry

advanced with respect to her breach of contract claim involved the assertion that Bluefield breached an implied warranty to construct the garage in a good and workmanlike manner. Fry submitted several exhibits, aside from the photographs in question, and offered the testimony of an expert in support of her assertion that Bluefield breached the implied warranty of workmanlike quality. The photographs of the water leak and millipede problem were therefore cumulative and had marginal probative value.

Under these facts, we cannot say that by admitting the photographs that were turned over the day of trial, the district court exercised its discretion on grounds or reasons clearly untenable or to an extent clearly unreasonable. The introduction of the disputed exhibits did not significantly alter Bluefield's defense strategy, nor was Bluefield unable to effectively respond to the exhibits through cross-examination and its direct evidence. We note Bluefield has also claimed the photographs were not relevant to a breach of contract case and should have been excluded on that basis. *See Estate of Long*, 656 N.W.2d at 90 ("[T]he photographs were not relevant to any issue properly before the jury and there was no 'just reason for their admission.' Thus, the district court's admission of the photos . . . amounted to an abuse of discretion." (citation omitted)). However valid this argument may be, Bluefield has failed to demonstrate how his substantial rights have been affected by the introduction of the untimely disclosed exhibits. While we certainly do not condone the last minute disclosure of exhibits in this case, Bluefield has failed to establish substantial prejudice resulted due to the introduction of the untimely exhibits. We therefore reject Bluefield's argument that a new trial is warranted under Iowa Rule of Civil Procedure 1.1004(1), (3), or (8).

**B. Improper Remarks by Fry.** Bluefield asserts that the district court's failure to grant a mistrial following Fry's statements in violation of the motion in limine deprived it of a fair trial, amounted to misconduct by the prevailing party, constituted a surprise which ordinary prudence could not have guarded against, and constituted an error of law in the proceeding. Iowa R. Civ. P. 1.1004(1), (2), (3), (8).

The district court found that Fry's improper remarks were not made in bad faith and were "to a large extent, if not wholly," made in response to questions posed by Bluefield's counsel. Immediately following the improper remarks, the district court sustained Bluefield's objection, struck the remarks from the record, and directed the jury not to consider them. "Generally, an admonition to the jury to disregard inadmissible testimony is sufficient to cure any prejudice." *State v. Brotherton*, 384 N.W.2d 375, 381 (Iowa 1986); *State v. Brown*, 397 N.W.2d 689, 699 (Iowa 1986) ("[A] trial court's quick action in striking the improper response and cautioning the jury to disregard it, coupled, when necessary, with some type of general cautionary instruction, will prevent any prejudice."). "We . . . allow trial courts broad discretion in determining whether to grant a mistrial. Such discretion is a recognition of the trial court's better position to appraise the situation in the context of the full trial." *Eldridge v. Casey's Gen. Stores, Inc.*, 533 N.W.2d 569, 571 (Iowa Ct. App. 1995) (citation omitted).

Bluefield has not shown that the district court's admonishment failed to cure any prejudice caused by the violation of the motion in limine. These facts do not present an "extreme instance" in which "manifest" prejudice provides sufficient grounds for a new trial. *See State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998). We find neither abuse of discretion nor error of law in the denial of the request for a

mistrial or the denial of a new trial based on the grounds asserted by Bluefield in its appeal asserting a new trial is warranted in light of Fry's statements in violation of the motion in limine.

**C. Jury Award.** Bluefield also asserts the jury verdict is excessive due to passion or prejudice. *See* Iowa R. Civ. P. 1.1004(4). We review claims alleging excessive damages influenced by passion or prejudice for abuse of discretion. *WSH Props., L.L.C.*, 761 N.W.2d at 49. A presumption of passion or prejudice arises when a jury verdict is "flagrantly excessive." *Id.* at 50. Once the presumption of passion or prejudice is dispelled, we look to other indications in the record to support a finding of passion or prejudice. *Id.* at 51. In considering whether a verdict is so excessive as to show it is the result of passion or prejudice, " 'we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear.' " *Townsend v. Mid-Am. Pipeline Co.*, 168 N.W.2d 30, 33 (Iowa 1969) (citation omitted).

We conclude that the presumption of passion or prejudice is dispelled in this case because the jury verdict is supported by substantial evidence. The jury awarded $42,000 for the cost to complete the project. The contract price of the project was $101,250. Fry stated she paid Bluefield a total of $79,309. Fry acknowledged that $1295.74 of the total was for a "dog run" that was not included in the original budget. Fry also spent $5326.54 on cabinets, though the original bid only budgeted $3000 for cabinets.[1] Thus, Fry incurred a total of $81,013.26 on the project as originally contemplated by the parties before Bluefield's departure. At the time Bluefield stopped working on the project, a balance of $20,236.74 remained on the original contract.

---

[1]Fry conceded she was responsible for the amount in excess of the budgeted sum for the cabinets.

Following Bluefield's departure, Fry spent over $20,000 on materials and labor to continue work on the addition. An estimate from S.R.S. Construction stated it would cost another $24,650 to complete the addition. In addition to the cost to complete, S.R.S. Construction submitted a bid in the amount of $32,480 for the cost to repair the roof constructed by Bluefield which Fry and her expert claimed was defective. Moreover, Fry and Anthony Williams testified the original contract included a geothermal unit, which would cost $18,000 to install. Whether this was included in the original proposal was highly disputed at trial. There were also significant cost overruns on other items that were part of the original proposal. The record reveals substantial disputes as to the amount of these additional costs and the responsible party. After sorting through all of the contested evidence and testimony, it is clear the jury award of $42,000 as the cost to Fry to complete the project due to Bluefield's breach is supported by substantial evidence and is not flagrantly excessive.

The jury also awarded Fry $9662.76 for the cost of delay caused by Bluefield. Fry testified that she financed the addition to her home through a home equity line of credit of $100,000. Fry explained the line of credit may be turned into a mortgage once the addition is completed. Fry testified the delay in finishing the project prevented her from converting her home equity line of credit into a thirty-year conventional mortgage. She testified that between December 28, 2008, and July 1, 2010, she paid $18,749.88 in interest on her loan. Had she been able to convert her home equity line of credit into a thirty-year mortgage, however, she would have paid $7421.67 in interest. Therefore, the cost of delay awarded by the jury is supported by substantial evidence and not flagrantly excessive.

We also find no indication in the record that the jurors acted out of passion or prejudice in such a way as to punish Bluefield. As discussed above, the jury verdict is supported by substantial evidence. Further, the record is devoid of any other objective evidence affirmatively establishing the jury acted out of passion or prejudice. *See Allen v. Lindeman*, 259 Iowa 1384, 1398, 148 N.W.2d 610, 619 (1967) (stating "it must affirmatively be shown prejudice and passion existed before this court should interfere with a verdict"). Therefore, based on the evidentiary support of the verdict and the lack of evidence showing passion or prejudice, we conclude the damages awarded by the jury in this case are not excessive or influenced by passion or prejudice. Further, because we conclude the verdict was supported by substantial evidence, we reject Bluefield's claim under Iowa Rule of Civil Procedure 1.1004(6).

**D. Directed Verdict.** Following the close of Fry's case-in-chief, Bluefield made a motion for directed verdict claiming Fry failed to introduce sufficient evidence on the element of breach. In response to Bluefield's motion, Fry's counsel argued sufficient evidence supported the breach element in three ways: First, Bluefield breached the contract by exceeding the agreed upon price of the project; second, Bluefield's dilatory progress on completion of the contract amounted to a breach; and third, Bluefield's shoddy workmanship breached the implied warranty of workmanlike quality. The district court denied Bluefield's motion for directed verdict.

We review a denial of a motion for directed verdict for correction of errors at law. *Hasselman*, 596 N.W.2d at 545. On a motion for directed verdict, the trial court is required to view the evidence in the light most favorable to the plaintiff, even if contradictory evidence exists. *Bellville v.*

*Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). A motion for directed verdict must be overruled if substantial evidence supports each element of each claim. *Easton v. Howard*, 751 N.W.2d 1, 5 (Iowa 2008). Evidence is substantial "[w]hen reasonable minds would accept the evidence as adequate to reach the same findings." *Id.* Our task is to determine whether the district court "correctly determined there was sufficient evidence to submit the issue to the jury." *Id.*

We conclude substantial evidence supports Fry's breach of contract claim. In construction contracts, "it is implied, unless there is express contrary agreement, that 'the building will be erected in a reasonably good and workmanlike manner.' "[2] *Busker v. Sokolowski*, 203 N.W.2d 301, 303 (Iowa 1972) (quoting *Markman v. Hoefer*, 252 Iowa 118, 123, 106 N.W.2d 59, 62 (1960)). In this case, Fry testified that problems with the roof of the garage were a factor in her decision to ask Bluefield to discontinue the project. Chad Evans opined that, overall, Bluefield's work was subpar. Evans stated the roof on the garage installed by Bluefield fell below industry standards and would cost $32,480 to repair. There were also numerous claims of other deficiencies in the work performed by Bluefield.

There was also substantial evidence presented by Fry that numerous individual bid items were well over budget at the time Bluefield was removed from the project. Bluefield acknowledged that it did not discuss this with Fry or have any written documentation as to change orders. Lastly, there was substantial evidence in the record that

---

[2]Bluefield briefly argues the admission of evidence related to the cost to repair Bluefield's shoddy workmanship was an error of law warranting a new trial. *See* Iowa R. Civ. P. 1.1004(8). Because the evidence was directly related to Fry's claim based on the implied warranty of workmanlike construction, the district court did not err in admitting evidence of cost of repair.

little or no work was being performed on Fry's addition in the weeks leading up to Bluefield's removal from the project. Therefore, there was substantial evidence in the record to support a claim of breach so that it was not error for the district court to deny the motion for directed verdict and allow the matter to proceed to the jury. On these facts, we also conclude substantial evidence supports the jury's verdict. We therefore reject Bluefield's arguments under Iowa Rule of Civil Procedure 1.1004(6) and rule 1.1004(9).

**V. Conclusion.**

For the reasons stated above, Bluefield has not shown the district court committed any error in its decisions during the trial that substantially prejudiced Bluefield's rights to a fair trial. Therefore, Bluefield is not entitled to a new trial. We vacate the decision of the court of appeals, and the judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**