# IN THE COURT OF APPEALS OF IOWA

No. 17-0479
Filed September 12, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TRISHA MARIE GOLDENSOPH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Timothy J. Finn,

Judge.


        Trisha Goldensoph appeals following her convictions of one count of

delivery of methamphetamine and one count of possession of methamphetamine.

**AFFIRMED.**


        Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

        Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney

General, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

The Iowa State University Police Department used a confidential informant to make two controlled buys of methamphetamine. The State charged Trisha Marie Goldensoph with crimes arising from these transactions. A jury found her guilty of delivery of methamphetamine and possession of methamphetamine. *See* Iowa Code §§ 124.401(1)(c)(6); 124.401(4); 124.413 (2015). Goldensoph moved for a new trial. The district court denied the motion.

On appeal, Goldensoph challenges (1) the sufficiency of the evidence supporting the jury's findings of guilt and (2) the district court's denial of her motion for new trial premised on an allegation that "three jurors" were "sleeping" during trial.

## I.    Sufficiency of the Evidence

The jury was instructed the State would have to prove the following elements of delivery of methamphetamine:

> 1. On or about the 2nd day of November, 2015, the defendant delivered methamphetamine.
> 2. The defendant knew that the substance she delivered was methamphetamine.

The jury was also instructed the State would have to prove the following elements of possession of methamphetamine:

> 1. On or about the 2nd day of November, 2015, the defendant knowingly or intentionally possessed methamphetamine or aided and abetted another in possession of methamphetamine.
> 2. The defendant knew that the substance she possessed was methamphetamine.

Goldensoph argues "there is insufficient evidence to show the substances which were introduced into evidence . . . were the substances which were recovered from

the controlled buys." She relies on date and weight discrepancies in the State's evidence. Our review is for substantial evidence.[1] *See State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010).

A reasonable juror could have found the following facts. An ISU police officer oversaw a controlled drug purchase on November 2, 2015. He testified the substance to be purchased was methamphetamine. He "searched the confidential informant, provided the confidential informant with the US currency [and a] recording device, and followed the informant to the parking lot where [he] observed the deal." Following the transaction, the informant turned over the drugs to the officer, who weighed it "in the packaging." The officer believed the weight was "2.4 grams or 2.6 grams." He marked the packet of methamphetamine with Goldensoph's name, the date of the purchase, and the case number.

The same ISU police officer supervised a second controlled buy the following day. Again, the substance to be purchased was methamphetamine. The same procedure was followed. The officer weighed a baggie of methamphetamine obtained in the transaction without removing the contents from its packaging. The officer testified the total weight was "probably between 1.5 and 1.6 grams." Again, he marked the bag with the date of the transaction—November 3, 2015—as well as the ISU police department case number. He identified Goldensoph as the person who delivered the methamphetamine.

---

[1] Goldensoph mentions the weight-of-the-evidence standard applicable to certain new trial motions, but we believe she is simply mounting a challenge to the sufficiency of the evidence.

A second officer with the ISU police department testified he took custody of the methamphetamine from both transactions and there was no conceivable way in which the evidence would have been tampered with once it reached the evidence locker. He acknowledged a laboratory receipt for the department of criminal investigation (DCI) showed an occurrence date of December 4, 2015, for the second transaction, which was inconsistent with the date on the second methamphetamine baggie. He also testified the net weight of the first sample was 1.75 grams and the net weight of the second sample was .97 grams. He confirmed the substances were methamphetamine.

A person in the vehicle with Goldensoph during the transaction on November 3, 2015, testified Goldensoph gave her methamphetamine to weigh out. Using a scale Goldensoph provided, she weighed out a "teener" of 1.65 or 1.75 grams. She put the teener in a bag and handed it to a person in the backseat of the vehicle.

This evidence amounts to substantial evidence in support of the jury's findings that Goldensoph delivered methamphetamine and possessed methamphetamine. The jury was free to make these findings notwithstanding the discrepancy in the offense dates for the second transaction. That discrepancy was explained by two DCI employees. One stated the offense date on the DCI receipt was input manually; another said the December 4, 2015 offense date may have been a typographical error. The jury could have credited their testimony and the testimony of the police officer who oversaw the transaction over the DCI laboratory receipt. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) ("Inherent in our

standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." (citation omitted)).

As for the differing weights of the methamphetamine samples, the jury could have ascribed the heavier weights documented by the police department to the inclusion of packaging materials. And the jury could have questioned the accuracy of Goldensoph's scale used to weigh the methamphetamine in the second transaction relative to the weight documented on a DCI apparatus.

We affirm the jury findings of guilt for delivery of methamphetamine and possession of methamphetamine.

## II. *Motion for New Trial – Sleeping Jurors*

A friend of Goldensoph attended trial and, at the behest of Goldensoph, informed the court she observed three jurors sleeping during the presentation of evidence. Goldensoph asked the court to declare a mistrial. The district court separately questioned the twelve jurors and each denied sleeping. At that juncture, Goldensoph's attorney stated, "I'm not aware of any remedy that's available." The district court denied the mistrial motion.

Goldensoph reprised the issue in a motion for new trial. She acknowledged "[e]ach juror denied having slept" and "concede[d] she [could not] make a direct showing as to prejudice." Nonetheless, she asked the court "to hold that when a juror sleeps during trial, that prejudice can be presumed." The district court denied the motion.

On appeal, Goldensoph argues "failure to grant the mistrial was an abuse of discretion." On the one hand, she asserts "[n]o witness contradicted" the

testimony of her friend. On the other, she concedes "[e]ach juror denied sleeping." Her only argument in support of reversal is the "self-serving" nature of the juror statements and the fact that "one of the jurors who was accused of sleeping had left her glasses behind at the break."

Our review of a ruling on a new trial motion depends on the grounds asserted in the motion. *See Fly v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). Goldensoph's new trial motion was premised on the district court's denial of her mistrial motion, which, in turn, was premised on her claim of juror misconduct in sleeping during trial. Our review is for an abuse of discretion. *See State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017) (stating we review denials of mistrial for an abuse of discretion); *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) ("We review a denial of a motion for a new trial based upon juror misconduct or juror bias for an abuse of discretion.").

We discern no abuse of discretion. The district court questioned each juror before denying the mistrial motion. Although the testimony may have been self-serving, the district court gave it credence, stating: "I interviewed the three people identified as the prospective jurors or who allegedly fell asleep. All of them denied falling asleep, all of them said that they were available or were listening to the evidence . . . ." *See Webster*, 865 N.W.2d at 238 ("Of course, the juror's testimony may be self-serving, but the district court found her testimony credible.").

We turn to Goldensoph's assertion that a juror left her glasses behind during a break. This assertion, even if true, is of little import in the juror misconduct analysis because the juror could have removed her glasses for any number of reasons other than to take a nap. *See, e.g.*, *State v. Smith*, 193 N.W. 418, 422

(Iowa 1923) ("If a juror should lend his spectacles to his fellows to aid them in seeing more clearly an exhibit which has been submitted to them by the court, or to read the court's instructions, his courtesy violates no rule of law, nor does it afford any reason for questioning the integrity of the verdict."); *Barker v. Inc. Town of Perry*, 25 N.W. 100, 102 (Iowa 1885) ("Many jurors are required, by age or defect of sight, to use glasses to enable them to read the evidence submitted to them, or to read the instructions of the court. If one of such jurors should lose his spectacles it would be rather a rigid sort of practice which would preclude the court from allowing glasses to be handed to him to enable him to examine such writings as his duty requires him to examine."). We affirm the denial of the motion for new trial.

**AFFIRMED.**