# IN THE COURT OF APPEALS OF IOWA

No. 18-0399
Filed October 24, 2018

**IN THE MATTER OF S.J.,**
**Alleged to be Seriously Mentally Impaired,**

**S.J.,**
 Respondent-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

S.J. appeals involuntary-commitment orders under Iowa Code chapters 125 and 229 (2018). **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Zachary S. Hindman of Mayne, Hindman, & Daane, Sioux City, until withdrawal, and then Jason B. Gann of Moore, Heffernan, Moeller, Johnson & Meis, LLP, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Special Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

S.J. appeals involuntary-commitment orders under Iowa Code chapters 125 and 229 (2018). She argues the district court's findings that she suffers from a substance-related disorder, as provided in Iowa Code sections 125.2(14) and 125.75(2)(a), and a serious mental impairment, as defined in section 229.1(20), are not supported by sufficient evidence.[1]

I. **Background Facts and Proceedings**

In February 2018, hospital staff filed applications in the district court alleging S.J. to be a person with a serious mental impairment and substance-related disorder. The applications and supporting affidavits noted S.J. was brought to the hospital due to hallucinations and, over the previous several days, she was unable to communicate and was walking around her house naked. At the hospital, S.J. tested positive for marijuana and PCP and exhibited "delusional and psychotic" behavior. When hospital staff asked S.J. about her children, she responded her kids "are in the hospital being born." S.J. also advised staff she takes her insulin by having sex. S.J. additionally stated to staff that she is "a judge or God" and at times believed she was dead or in heaven. The applications also alleged S.J. was assaultive and sexually inappropriate with others and required seclusion.

The district court entered orders for immediate custody pursuant to Iowa Code sections 125.81 and 229.11 and ordered a personal examination of S.J. A psychiatrist examined S.J. on February 27 and authored reports reflecting his

---

[1] We note from the outset our rejection of the State's error-preservation challenge. The issues in this appeal were unquestionably presented to and ruled upon by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

findings. As to the chapter 229 matter, the psychiatrist diagnosed S.J. with substance-induced psychosis and concluded that, because of the mental illness, S.J. lacks sufficient judgment to make responsible decisions with respect to her hospitalization or treatment. The psychiatrist opined S.J.'s mental impairment resulted from "recent delirium" and the impairment was treatable and could be "resolved when not using illicit drugs." The psychiatrist concluded that, as a result of her mental illness, S.J., if allowed to remain at liberty without treatment, was likely to physically injure herself or others, inflict serious emotional injury upon her family members, and be unable to satisfy her own personal needs.

As to the chapter 125 matter, the psychiatrist diagnosed S.J. with the substance-related disorder of "cannabis use disorder with frequent episodes of usage, psychosis, delirium, and agitation" and concluded the disorder functionally impaired her in relation to "school and academic failure, as well as family, social, and medical problems." The doctor opined the disorder is treatable and S.J. would improve "when not using marijuana." The psychiatrist further opined that, without inpatient treatment, S.J. would likely injure herself or others, noting she was under the influence of marijuana when she overdosed on cold medicine.

An evidentiary hearing on both applications was held on March 1. At the hearing, the psychiatrist testified what he learned of S.J. during his examination of her—she had overdosed on cold medicine prior to being brought to the hospital; she uses marijuana on a "fairly regular basis"; she uses cold medicine less often; and the use of cold medicine, either by itself or mixed with marijuana, "caused a state of delirium." As to the state of S.J.'s mental health, the psychiatrist testified:

> As I recall, she really initially wasn't able to make any sort of decisions about herself. She, however, was able to recuperate very, very well. I actually chatted with her for a brief period of time this morning and she's doing exceedingly well from a medical standpoint. She was able to have a reasonable, logical conversation with me. [A]nd this was a young girl who was very, very sick.

The psychiatrist went on to testify that, as a result of her substance-induced psychosis, S.J., if allowed to remain at liberty without treatment, was likely to physically injure herself or others, inflict serious emotional injury upon her family members, and be unable to satisfy her own personal needs. The psychiatrist based these conclusions on the fact that S.J. voluntarily took an excessive amount of cold medicine, which resulted in her "psychotic delirium" and could have resulted in death. Although the psychiatrist believed S.J. was doing "a lot better" at the time of the hearing than she was previously, he concluded she needed to be committed to inpatient treatment because if her desire for outpatient treatment was allowed, "she is at risk of going back and using some substance that has the potential of creating significant harm for her." The psychiatrist further testified S.J.'s cannabis use disorder functionally impairs her home and school life and her use of cannabis, together with cold medicine, resulted in a "life threatening event." The psychiatrist testified there is a "significant risk" S.J. will use the cold medicine or "some other chemical with equal potential lethality" in the future. The psychiatrist also testified his understanding that S.J. has undergone substance-abuse treatment in the past, but she went back to using drugs thereafter.

S.J. testified on her own behalf and admitted she suffers from cannabis use disorder but asserted she is "trying to stop [her]self from the use of it." When asked on cross-examination whether this was the first time she "overdose[d] on pills," S.J.

responded she has "t[a]ken some before" but has not overdosed. She asserted she is not addicted to pills, they are just "something to take the edge off." A review of S.J.'s testimony at the commitment hearing shows she responded logically to questions and understood the nature of the proceedings.

The court found S.J. to be afflicted by a substance-related disorder as provided in Iowa Code sections 125.2(14) and 125.75(2)(a) and seriously mentally impaired as defined in Iowa Code section 229.1(20)(a)–(c). The court ordered S.J. to be returned to the hospital until placement in inpatient treatment became available. As noted, S.J. appeals.

**II.  Standard of Review**

Appellate review of sufficiency-of-the-evidence challenges in involuntary-commitment proceedings is for errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013); *see also Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (noting the sufficiency of evidence poses a legal question). The allegations contained in the involuntary-commitment application must be proven by clear and convincing evidence, which "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428 (quoting *In re J.P.*, 547 N.W.2d 340, 342 (Iowa 1998)); *see also* Iowa Code §§ 125.82(4), 229.13(1).

**III.  Analysis**

A.  Substance-Related Disorder

S.J. argues there was insufficient evidence for the district court to involuntarily commit her as a result of her substance-related disorder. S.J. does not dispute that she suffers from cannabis use disorder or that such disorder

amounts to a "substance-related disorder" as defined in Iowa Code section 125.2(14). Instead, she contends there was no evidence to support a finding that she, if allowed to remain at liberty, was likely to be a danger to herself or others as a result of the disorder.

Due process requires that a person be dangerous to oneself or others before they may be involuntarily committed. *See In re E.J.H.*, 493 N.W.2d 841, 843 (Iowa 1992) (discussing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)). In order for a person to be subject to involuntary commitment, section 125.75(2)(a)(1) requires a showing that the person "presents a danger to self or others and lacks judgmental capacity *due to* . . . [a] substance-related disorder as defined in section 125.2." (Emphasis added.) S.J. does not challenge the establishment of the judgmental-capacity element. Instead, she contends that, "even if the record supports a finding that she was dangerous in general," clear and convincing evidence does not support a finding that she was dangerous as a result of her "cannabis use disorder with frequent episodes of usage, psychosis, delirium, and agitation."

In his report, the psychiatrist concluded that, without inpatient treatment, S.J. would likely injure herself or others in the future as a result of her cannabis use disorder, noting she was using marijuana when she overdosed on cold medicine. During his examination of S.J., the psychiatrist learned that S.J. used marijuana on a regular basis. The psychiatrist concluded that, in the instance resulting in her hospitalization, S.J. likely combined the use of marijuana and cold medicine, which could have resulted in a "life threatening event." S.J. admitted to regular use of marijuana and occasional use of pills "to take the edge off."

In deciding whether one poses a danger to oneself, courts must "make a predictive judgment." *In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988). The evidence shows that S.J. was, as a result of her cannabis use disorder, under the influence of marijuana when she decided to take thirty cold medicine pills, resulting in an overdose, "psychotic delirium," her hospitalization, and almost death. Under these circumstances, we conclude the district court's finding that S.J. posed a danger to herself as a result of her cannabis use disorder is supported by clear and convincing evidence. We therefore affirm the chapter 125 involuntary-commitment order.

### B.     Serious Mental Impairment

S.J. argues there was insufficient evidence for the district court to conclude she suffers from a serious mental impairment. She specifically contends that "[e]ven if the evidence in the record . . . supports a finding that [she] had been afflicted with a mental illness at some point in the past, the evidence in the record shows that any such illness had completely resolved by the time of the commitment hearing." She maintains because she was not presently suffering from a mental illness at the time of the hearing, the serious-mental-impairment finding was made in error. The State agrees the relevant point in time for a finding of mental illness is the time of the commitment hearing but argues "there is no clear evidence in the record that [S.J.] was no longer mentally ill at the time of the commitment hearing."

To prove a person is afflicted by a "serious mental impairment," clear and convincing evidence must establish three elements. *See* Iowa Code § 229.1(20). S.J. only challenges the sufficiency of the evidence to support the first element, that she was "a person with a mental illness" at the time of the commitment hearing.

*See id.* S.J. does not dispute that substance-induced psychosis qualifies as a mental illness under chapter 229. *See id.* § 229.1(11) (defining mental illness). She only disputes that she was afflicted by such illness at the time of the commitment hearing.

It is undisputed that S.J. was in a substance-induced state of psychosis before and when she was admitted to the hospital. The term "psychosis" refers to a "mental illness that can cause a person's character to change and to make the person unable to behave within the range of what is considered normal." *Psychosis*, Black's Law Dictionary 1422 (10th ed. 2014). A review of the psychiatrist's report and testimony reveals his conclusions were based on S.J.'s status when she was admitted to the hospital, as opposed to the time of the commitment hearing. The psychiatrist's report and testimony indicate that although S.J. initially presented with the mental illness of psychosis, the psychiatrist clearly concluded the psychosis resulted from substance abuse, and the psychiatrist recommended inpatient substance-abuse treatment, rather than mental-health treatment, to alleviate the symptoms. In addition, although, according to the psychiatrist's testimony, S.J. "initially wasn't able to make any sort of decisions about herself," she "was able to recuperate very, very well" and she was doing "exceedingly well from a medical standpoint" at the time of the commitment hearing. Further, the psychiatrist characterized his conversation with S.J. the morning of the hearing as "reasonable" and "logical." Finally, S.J. provided logical testimony at the hearing and indicated she understood the nature of the proceedings.

Upon our review of the record, and applying the presumption in favor of S.J., *see* Iowa Code § 229.12(3)(a), we find a substantial doubt as to whether S.J. was in a state of psychosis at the time of the commitment hearing. As such, we conclude the finding that S.J. suffered from a serious mental impairment at the time of the commitment hearing was unsupported by clear and convincing evidence. We reverse the chapter 229 order and remand to the district court with instructions to deny the application under chapter 229 and terminate that proceeding. *See id.* § 229.12(3)(c).

## IV.     Conclusion

We conclude the district court's finding that S.J. posed a danger to herself as a result of her cannabis use disorder is supported by clear and convincing evidence. We therefore affirm the chapter 125 involuntary-commitment order. We conclude the finding that S.J. suffered from a serious mental impairment at the time of the commitment hearing is unsupported by clear and convincing evidence. We reverse the chapter 229 order and remand to the district court with instructions to deny the application under chapter 229 and terminate the proceeding.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**