# IN THE COURT OF APPEALS OF IOWA

No. 19-0908
Filed April 15, 2020

IN THE MATTER OF T.M.,
**Alleged to Be Seriously Mentally Impaired,**

**T.M.,**
　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, David Porter, Judge.

T.M. appeals an order for hospitalization under Iowa Code chapter 229 (2019). **AFFIRMED.**

Tyler Phelan of Borseth Law Office, Altoona, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Special Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

T.M. has a long history of treatment for schizoaffective disorder. He has previously been the subject for emergency orders for hospitalization, twice in 2016 and again in 2018. In April 2019, an application was filed for the involuntary hospitzliation of T.B. as a result of his alleged serious mental impairment. *See* Iowa Code § 229.6(2)(a)(2) (2019). At the time, T.M. was homeless. The attached affidavit alleged T.B. to be delusional, suffering from schizophrenia, a danger to himself or others, and refusing to take recommended medications. The district court entered an order for immediate custody pending a hospitalization hearing. *See id.* § 229.11(1).

A psychiatric mental-health nurse practitioner authored an examination report of a mental-health professional pursuant to section 229.10, in which she concluded T.B. was mentally ill; incapable of making responsible decisions as to his hospitalization or treatment; treatable and would benefit from treatment; likely to physically injure himself or another or inflict serious emotional injury on family members or those who lack a reasonable opportunity to avoid contact with him if allowed to remain at liberty without treatment; and incapable of satisfying his needs for nourishment, clothing, essential medical care, or shelter. The report noted the conclusions were based upon the following recent over acts on the part of T.M.: discontinuing his medications, aggressive behaviors, poor hygiene, audio-visual hallucinations, and verbal aggression. The report also concluded T.M.'s aggression, disorganization, and lack of insight while not medicated was likely to cause him to suffer physical injury, debilitation, or death in the reasonably foreseeable future. Attached medical records noted T.M. recently threatened to

harm his mother, made statements about "suicide by cop," and refused to eat because he thought his mother was trying to poison him. At the hospitalization hearing, the nurse practitioner testified T.M. was being non-compliant with his mental-health medication and, as a result, was being "very aggressive."

Following the hearing, the magistrate entered a finding of serious mental impairment, concluding, among other things, T.M. was a danger to himself or others, likely to inflict emotional injury upon family members or others who are unable to avoid him, and unable to satisfy his basic needs for food, shelter, and essential medical care. The court ordered T.M. to be hospitalized. T.M. appealed to the district court. *See id.* § 229.21(3).

Prior to the ensuing de novo trial before the district court, a second mental-health professional examined T.M. and reached the same conclusions as the nurse practitioner. The professional echoed his conclusions in his trial testimony. As a result of his mental-health issues and refusal to take his medication, the professional opined if T.M. was released "he would wind up in some type of a fight or altercation, wind up in jail." The professional also noted his witnessing of T.M. being verbally aggressive toward hospital staff. T.M. was disruptive and nonsensical at the hearing. Among other things, he accused hospital staff of putting drugs in his food. While the court was announcing its finding of serious mental impairment from the bench, T.M. stated, "[I]f you inject me, I guarantee I'm going to strike someone." The court entered an order finding T.M. seriously mentally impaired and ordering his hospitalization.

T.M. now appeals, challenging the sufficiency of the evidence supporting the court's conclusion he is seriously mentally impaired.[1]  Appellate review of sufficiency-of-the-evidence challenges in involuntary commitment proceedings is for errors at law.  *B.B.*, 826 N.W.2d at 428; *see also Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (noting the sufficiency of evidence poses a legal question). The allegations contained in the involuntary-commitment application must be proven by clear and convincing evidence, which "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *B.B.*, 826 N.W.2d at 428 (quoting *In re J.P.*, 547 N.W.2d 340, 342 (Iowa 1998)); *see also* Iowa Code § 229.13(1).

To prove a person is afflicted by a "serious mental impairment," clear and convincing evidence must establish three elements—(1) the person suffers from a mental illness; (2) the mental illness results in a lack of "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) because of the illness the person is: (a) "likely to physically injure the person's self or others if allowed to remain at liberty without treatment," (b) "likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment," (c) "unable to satisfy the person's needs for nourishment, clothing, essential

---

[1] The record on appeal discloses T.M. has been discharged from commitment and the proceeding has been terminated.  This does not render the appeal moot, as "a party who has been adjudicated seriously mentally impaired and involuntarily committed is presumed to suffer collateral consequences justifying appellate review."  *In re B.B.*, 826 N.W.2d 425, 429 (Iowa 2013).

medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death," or (d) subject to "a history of lack of compliance with treatment and" either the "[l]ack of compliance has been a significant factor in the need for emergency hospitalization" or "has resulted in one or more acts of serious physical injury" or attempts at the same. Iowa Code § 229.1(20).

On appeal, T.M. only challenges the sufficiency of the evidence supporting what has commonly been referred to as the dangerousness or endangerment component of the final element.[2]

As to section 229.1(20)(a), the evidence shows T.M. recently threatened to use a hatchet against his mother and made statements about "suicide by cop." *See In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (noting the endangerment element merely "requires that the threat the patient poses to himself or others be evidenced by a 'recent over act, attempt or *threat*'" (emphasis added) (citations omitted)). These threats were sufficient to support the court's determination. *See, e.g., B.B.*, 826 N.W.2d at 433–34 (citing respondent's "wild threats to harm himself and others" as evidence in support of finding he "was likely to cause serious physical injury to himself or others if he remained at liberty"); *In re Foster*, 426 N.W.2d 374, 379 (Iowa 1988) ("Overt acts include behavior such as a threat to take one's life . . . ." (citation omitted)); *Mohr*, 383 N.W.2d at 542 (relying on threatening nature of conduct); *In re M.L.*, No. 17-1561, 2018 WL 2230668, at *3

---

[2] We note T.M. does not challenge the mental-illness-related component of the final element.

We also note the final alternative of the third element, section 229.1(20)(d) was added by statutory amendment in 2018. *See* 2018 Iowa Acts ch. 1056, § 7.

(Iowa Ct. App. May 16, 2018) ("[A] threat to kill—standing alone—can qualify as an overt act for purposes of chapter 229.").

Furthermore, T.M.'s threats against his mother support the district court's conclusion T.M. was "likely to inflict serious emotional injury on members of the person's family" if he were allowed to remain at liberty. *See* Iowa Code § 229.1(20)(b); *see also id.* § 229.1(19) (defining serious emotional injury). Likewise, the evidence shows T.M.'s mental illness has compromised his ability to satisfy at least his needs for essential medical care and nourishment, as he was refusing medications and would not eat because he feared he would be poisoned, to a point he would likely suffer physical injury, debilitation, or death. *See id.* § 229.1(20)(c). Finally, the record contains clear and convincing evidence T.M. has a history of lack of compliance with treatment that has been a significant factor in the need for emergency hospitalization. *See id.* § 229.1(20)(d).

On our review, we find no serious or substantial doubts about the correctness of the district court's conclusion drawn from the evidence that T.M. was seriously mentally impaired within the meaning of Iowa Code section 229.1(20). *See B.B.*, 826 N.W.2d at 428. As such, we affirm.

**AFFIRMED.**