# IN THE COURT OF APPEALS OF IOWA

No. 20-0415
Filed August 19, 2020

IN THE MATTER OF T.M.,
Alleged to Be Seriously Mentally Impaired,

T.M.,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.


T.M. appeals an order for hospitalization under Iowa Code chapter 229 (2020). **AFFIRMED.**



Alexander Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Special Assistant Attorney General, for appellee State.



Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

In February 2020, T.M.'s siblings filed an application alleging T.M. to be seriously mentally impaired. The court entered an order for immediate custody and examination pursuant to Iowa Code section 229.11 (2020). Following examination, a qualified mental-health professional issued a report in which he concluded T.M. was mentally ill; incapable of making responsible decisions as to his hospitalization or treatment; treatable and would benefit from treatment; likely to physically injure himself or another or inflict serious emotional injury on family members or those who lack a reasonable opportunity to avoid contact with him if allowed to remain at liberty without treatment; and incapable of satisfying his needs for nourishment, clothing, essential medical care, or shelter. The report noted the conclusions were based upon the recent overt act of T.M. lacking insight and judgment regarding his mental illness and being "arrested on domestic abuse or assault charges causing bodily injury and interference with official acts." Attached medical records noted T.M. recently threatened three women at gunpoint.

Following an unreported hearing, a magistrate entered a finding of serious mental impairment, concluding, among other things, T.M. was dangerous because his illness causes him to be impulsive and deprives him of "the ability to think clearly and weigh his options in terms of decisions" and "[h]e is not capable of satisfying his needs for nourishment, clothing, essential medical care or shelter." The magistrate ordered T.M. to be hospitalized. T.M. appealed to the district court. *See* Iowa Code § 229.21(3). Prior to the ensuing de novo trial before the district court, the mental-health professional issued an updated report, in which he generally reached the same conclusions as in the first.

3

A trial de novo was held in early March. At the hearing, the court took judicial notice of a pending criminal case in which T.M. was arrested on charges of domestic abuse assault while displaying a weapon and assault causing bodily injury or mental illness.[1] The State also presented testimony from the mental-health professional who examined T.M. He answered in the negative when asked whether T.M. is capable of making responsible decisions with respect to his hospitalization or treatment in light of his mental illness. He additionally testified T.M. was treatable and would benefit from treatment. The professional answered in the affirmative when asked whether T.M. was likely to injure himself or others if allowed to remain at liberty without treatment. When asked what recent overt acts led to that conclusion, the professional stated, "[I]t's, you know, obviously, whatever happened before he came in." The professional also highlighted some of T.M.'s delusional thoughts. The professional added T.M. would be likely to emotionally injure his family members or those who lack a reasonable opportunity to avoid contact with him, given his suspiciousness and paranoia toward his family. He also testified T.M.'s mental illness was likely to result in his inability to satisfy his needs for nourishment, clothing, essential medical care, or shelter, which, in turn, was likely to cause him physical injury, debilitation, or death within the reasonably foreseeable future. He highlighted T.M. was refusing meals because he believed they were laced with Seroquel. On cross-examination the professional stated T.M.'s delusional thoughts and manic mood would present a danger to himself and others. On redirect, the professional specified T.M.'s recent behaviors

---

[1] The State provided the court with copies of the criminal complaints concerning those charges.

resulting in assault charges were recent overt acts in support of his conclusion T.M. would be likely to physically injure himself or others. At the end of the hearing, T.M. argued the State failed to satisfy the dangerousness elements of being seriously mentally impaired.

Following the hearing, the court entered an order affirming the finding of serious mental impairment and order for hospitalization. As to dangerousness, the court concluded T.M. was likely to injure himself or others if allowed to remain at liberty without treatment. The court concluded T.M.'s mental illness resulted in an inability to properly care for himself and the recent assault charges. The court also concluded, among other things, T.M.'s mental illness rendered him incapable of satisfying his needs for nourishment, clothing, essential medical care, or shelter.

T.M. appeals, claiming the evidence was insufficient to support a finding that he is seriously mentally impaired because there was no recent overt act to indicate he was likely to be dangerous.

Appellate review of sufficiency-of-the-evidence challenges in involuntary commitment proceedings is for errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013); *see also Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (noting the sufficiency of evidence poses a legal question). The allegations contained in the involuntary-commitment application must be proven by clear and convincing evidence, which "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428 (quoting *In re J.P.*, 547 N.W.2d 340, 342 (Iowa 1998)); *see also* Iowa Code § 229.13(1).

To prove a person is afflicted by a "serious mental impairment," clear and convincing evidence must establish three elements—(1) the person suffers from a mental illness; (2) the mental illness results in a lack of "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) because of the illness the person is: (a) "likely to physically injure the person's self or others if allowed to remain at liberty without treatment," (b) "likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment," (c) "unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death"; or (d) subject to "a history of lack of compliance with treatment and" the lack of compliance either "has been a significant factor in the need for emergency hospitalization" or "has resulted in one or more acts of serious physical injury" or attempts at the same. Iowa Code § 229.1(20).

On appeal, T.M. only challenges the sufficiency of the evidence supporting what has commonly been referred to as the dangerousness or endangerment component of the final element.

As to section 229.1(20)(c), we find the State presented sufficient evidence from which the district court could find clear and convincing evidence that, as a result of his mental illness, T.M. would be "unable to satisfy [his] needs for nourishment, clothing, essential medical care, or shelter" and it was likely that he would "suffer physical injury, physical debilitation, or death." The professional generally testified that T.M.'s mental-health symptoms would be likely to interfere

with his ability to satisfy his daily needs—specifically as to nourishment, medical care, and shelter—if he were released without treatment. He refused meals at times, fearing they were laced with medications. He also refused medications aimed at alleviating his illness. If he was refusing meals and medications while hospitalized, he would certainly not be able to satisfy his needs for nourishment and medical care on the outside. The professional added T.M.'s mental state would compromise his ability to secure housing. The professional confirmed these deficiencies would likely cause him physical injury, debilitation, or death.

On our review, we find no serious or substantial doubts about the correctness of the district court's conclusion drawn from the evidence that T.M. was seriously mentally impaired within the meaning of Iowa Code section 229.1(20)(c). As such, we affirm.

**AFFIRMED.**