# IN THE COURT OF APPEALS OF IOWA

No. 17-1221
Filed September 12, 2018

IN RE THE MARRIAGE OF VICTORIA J. ARCHER
AND BRUCE D. ARCHER

Upon the Petition of
**VICTORIA J. ARCHER,**
Petitioner-Appellant,

**And Concerning**
**BRUCE D. ARCHER,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Warren County, John D. Lloyd,
Judge.

Victoria Archer appeals the order modifying child custody. **AFFIRMED AS
MODIFIED.**

James S. Blackburn of Finley Law Firm, PC, Des Moines, and Sandra L.
Slaton of Horne Slaton, PLLC, Scottsdale, Arizona, for appellant.

Katie M. Naset of Hope Law Firm, PLC, West Des Moines, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Victoria Archer appeals the court's modification of a dissolution decree placing her three minor children in the physical care of their father, Bruce. She challenges the: (1) denial of multiple requests for continuances due to her health; (2) admittance of the guardian ad litem's (GAL) written report into evidence and the GAL's testimony during trial; (3) preclusion of her evidence at trial which then led to the erroneous conclusion that Bruce met his burden of proof to modify custody; (4) reliance on facts which predated the prior modification decree; (5) conclusion that Bruce could provide superior care; and (6) placement of onerous conditions on her parenting time in the modified custody decree. Bruce requests an award of appellate attorney fees.

## I.       Background Facts and Proceedings

Bruce and Victoria Archer were married in 1992 and are the parents of seven children. In their May 2012 dissolution decree, the court awarded them joint legal custody of their six minor children, awarded physical care of the children to Victoria, and granted Bruce visitation. Since the dissolution decree, Bruce and Victoria have engaged in contentious post-dissolution litigation. At the time this modification action was filed, three of the children were minors. E.A. has now reached the age of majority. H.A. was born in 2004 and S.A. was born in 2007.

Bruce first filed for modification of child custody and visitation in April 2013, with Victoria filing a motion to hold Bruce in contempt soon after. Both made allegations against the other that each acted to inhibit the other parent's visitation or custody. In its decision, the court found Victoria placed two of the children in an out-of-state learning facility for eight months two weeks after the original entry of

the dissolution decree, without consulting with Bruce. At this facility, the children were subjected to appalling conditions. After returning from the learning facility, the same two children, along with another minor child, went on a visitation to Bruce's home. The three children were not returned to Victoria's custody at the conclusion of the visitation. During the five months leading to the modification hearing, these three children lived with Bruce but did not receive any type of education.

The court ultimately modified the decree in October 2013, transferring physical care of the two minor children that were sent to the learning facility to Bruce, in large part because of the children's adamant opposition to returning to Victoria's home. Bruce was also found in contempt on three of the twelve allegations Victoria brought against him, including failing to return the three minor children at the conclusion of his visitation.[1] Since the 2013 modification, the parties have filed numerous motions and attended mediations and hearings to resolve other post-dissolution matters.

Emails indicate Victoria and Bruce agreed to trade weekend visitations during the summer of 2016 in order to accommodate vacation plans. However, the exact arrangement is not specified. On August 16, Bruce returned the three minor children to Victoria at the end of his scheduled summer visitation. On August 17, Victoria emailed Bruce, "The children and I are moving back to Arizona. I would like to work out a visitation plan in the next couple of weeks for Christmas and

---

[1] The other allegations were allowing the children to participate in online social networking and email in direct violation of the divorce decree and failing to file his taxes and provide proof of his tax refund.

summer." On August 19, Bruce emailed Victoria stating that it was his weekend and the children were not at the house. He emailed again on August 22. A school official contacted Bruce on August 24, asking why one of their three minor children was not in school. The official informed Bruce that a truancy officer drove past Victoria's home and observed her in the process of moving with the children. The next day, Bruce drove past her house and made the same observations. He emailed Victoria asking where the children were and informed her of the school official's inquiry. On August 29, Victoria responded by email stating August 16 through 21 was her vacation time and reminded Bruce of the switched weekends to accommodate this. She further emailed that due to their vacation schedules, Labor Day and swapped weekends, his next scheduled visitation was September 16. She also asked Bruce to respond to her initial email about moving with the children and proposed a visitation schedule of a week at Christmas and four weeks in the summer.

On September 21, Bruce petitioned to modify the decree a second time, this time in regards to the custody of the three younger children, E.A., H.A., and S.A. The four older children were adults by that time. Bruce based his petition on Victoria's move with the three children to Arizona in August with virtually no notice. He alleged Victoria had no permanent residence so the children were residing in an unstable living environment and the children were not enrolled in school so Victoria was not meeting their educational needs.[2] Bruce also filed for the appointment of a GAL and applied for emergency relief to transfer physical care of

---

[2] All seven of the children were homeschooled by Victoria.

the children to him. On October 25, the court appointed a GAL but denied the application for emergency transfer of physical care.

On November 8, Bruce filed an application to initiate contempt proceedings against Victoria, alleging six counts stemming from her move to Arizona.[3] On January 4, 2017, Bruce and Victoria attended mandatory mediation during which the parties agreed E.A. would return to Bruce's care in Iowa, enroll into an Iowa school, and continue to see a therapist. Further, Bruce agreed to dismiss his application for rule to show cause with prejudice, and visitation was arranged for Bruce to visit with H.A. and S.A. and for Victoria to visit with E.A. Bruce would be responsible for the costs of flying to and from Arizona. The parties also agreed to complete their final mediation meeting by the end of March 2017.

Victoria retained counsel from October 24, 2016 until February 14, 2017, when her attorney requested permission to withdraw due to a breakdown in the attorney-client relationship. Victoria represented herself throughout the remaining proceedings until she filed this appeal.

On March 20, Victoria filed an application for an ex-parte writ of injunction to prevent educational assessments for the children which Bruce scheduled, arguing she was not consulted or informed about the needs for the assessments, the assessments could put the children at risk for regression in their therapy, and the assessments were not required since the children were homeschooled.

---

[3] Four counts of not allowing Bruce to exercise his parenting time, one count of unilaterally removing E.A. from the school district in Iowa to homeschool in Arizona without consultation, and one count of unilaterally moving all three minor children to Arizona without notice, failing to provide contact information, and failing to communicate or facilitate communication between Bruce and the children in an attempt to estrange them from him.

Victoria also filed a motion to dismiss the GAL, claiming, among other allegations, the GAL did not interview her suggested witnesses or investigate her safety concerns and left Victoria out of custody decisions made between the GAL and Bruce. The court overruled her motion for the injunction on March 24 and set her motion to dismiss the GAL for hearing on April 11.

On March 24, the GAL moved to expedite the trial based on the belief that the acrimonious fighting between the parties would worsen the longer the case was pending and the concern over the children being several grade levels behind in multiple educational areas. The GAL filed her preliminary report the same day. The court scheduled the hearing on the request for the same day as the motion to dismiss the GAL. On April 4, Victoria filed for a continuance based on witness availability.

On April 11, Victoria filed an application for rule to show cause making numerous allegations against Bruce, including preventing her from participating in the children's education while in Bruce's care, denying her visitation with the children on several occasions, and acting to interfere and estrange her relationship with the children. As a result of this application, the court ordered the parties to mediate and required the parties to make arrangements for a mediation session within a week and completion of the same two days prior to the hearing.

On April 11, the court held a hearing to address the pending matters but granted Victoria's request for a continuance, rescheduling Victoria's motion to remove the GAL and a status hearing for April 28. The court ordered Victoria's contempt matter to be heard at the time of trial in the interest of judicial economy given the mandatory mediation.

On April 14, Victoria requested another continuance as her witnesses were not available for the April 28 hearing. Both Bruce and the GAL resisted this request. On April 25, at a hearing on the request for a continuance, the court: (1) denied Victoria's request to remove the GAL; (2) ordered academic testing of the children to be completed a month prior to trial, requiring Bruce and Victoria to cooperate with the GAL and the testing process; (3) ordered the parties to select a mediator and date for mediation by May 11 with mediation to be completed by June 2; and (4) ordered the trial to commence no later than June 30 with an estimated trial time of four days.

On May 3, the court held a telephonic trial scheduling conference, after which the court filed a uniform trial scheduling order setting the trial date for June 13, which included deadlines for witness and exhibit list filings and exchanges. The order provided: "Court date is firm and no further continuances," and in bold print, "Violation of this order may result in sanctions, including dismissal or grant of the relief requested by the opposing party."

On May 17, Bruce filed a motion to compel mediation, claiming Victoria refused to schedule mediation before the court's June 2 deadline. He provided emails in which Victoria indicated she was unable to mediate in May due to commitments she could not change, but did not identify the commitments. On May 22, the court ordered the parties to engage in mediation on May 24 and advised that if Victoria failed to appear and participate, a show cause hearing would be scheduled for May 31, at which she would be ordered to appear.

On the morning of May 24, the day of the scheduled mediation, Victoria filed for a continuance of both the mediation and trial citing a "recent medical situation

that requires doctor's care with surgery imminent; she can not travel at this time. Physician letter forthcoming." The court denied Victoria's motion stating that it had insufficient information to warrant a continuance ex parte and there was no opportunity to hold a hearing prior to the mediation set for later that day. Victoria failed to appear at mediation.

Victoria filed another motion to continue on May 30, again citing imminent surgery and referenced her previous motion to continue. She attached a letter from Dr. Jennifer Reitz of Advanced Surgical Associates Gilbert which read "Victoria Archer has been under my care and is scheduled for surgery on 6/16/17. She is unable to travel until 2 weeks after surgery." The court set a telephonic hearing for June 6 to hear the motion.

Due to Victoria's failure to appear for mediation on May 24, the show cause hearing was set for May 31. Victoria failed to appear at this hearing as well. In the order filed after the May 31 hearing, the court stated Victoria's motion to continue was filed too late to provide Bruce a chance to respond before the show cause hearing. The court ordered Victoria to appear during the June 6 telephonic hearing regarding her motion to continue trial and to explain why she repeatedly filed late continuance motions that prevented the court from providing appropriate notice and scheduling hearings. The order included this message to Victoria:

> It is not clear from the physician's note as to whether the Petitioner is currently restricted from travel, or whether the travel restrictions will only be applicable after the anticipated surgery. **The Petitioner must have her physician provide more details as to the nature of the anticipated surgery. A more detailed physician's note must be filed BEFORE the June 6 hearing.**

(Bold in original). The court reserved ruling on any sanction for Victoria's failure to attend mediation and the show cause hearing.

On June 5, Bruce filed his witness and exhibit list. Also on June 5, Victoria filed two notes from doctors. One was from Dr. Reitz which again stated that Victoria was under her care and surgery was scheduled for June 16.[4] The other was a handwritten note on a prescription pad from Tushar Gohel, M.D.[5] On June 6 at 3:22 a.m., Victoria filed a patient discharge instruction sheet from a medical center which listed a confirmed June 16 appointment for general surgery.

The court conducted the scheduled telephonic hearing on June 6. In the order following the hearing, the court denied Victoria's motion to continue. The court found, "The information submitted to the Court in support of [her] motion is nonspecific and fails to provide the court with sufficient information to allow the Court to determine if [Victoria]'s motion has merit."

Victoria filed her witness list on June 8, with twenty-three potential witnesses. Later that same day, Bruce filed a motion for sanctions, asking the court to prevent Victoria from calling any witness or presenting any exhibits at trial based upon her failure to comply with the court's April 28 and May 22 orders regarding mediation. He asked for attorney fees relating to the mediation, motion to compel, and show cause hearings at which Victoria failed to appear. Bruce additionally filed a separate objection to Victoria's witness list based upon her

---

[4] It also stated, "Due to her medical condition she is unable to travel/fly beginning 5/10/17 through 7/1/17. It is imperitive [sic] that she undergo her surgery at this time."

[5] The note read, "Victoria Archer is undergoing management to her health conditions and had clinic visit 5/26/17, procedures 6/1/17 and had follow up visits, tests consultations & surgeries scheduled untile [sic] late June/2017 and limit's [sic] her travel."

failure to file and exchange witness lists by the trial scheduling order deadline. No exhibit list was filed by Victoria, but she did file a number of exhibits on June 9 and 12. The court ordered all pending motions to be heard on June 13, prior to the commencement of trial.

On June 9 and 12, Victoria filed objections "to the denial of her requested continuance" and again asked for the mediation and trial to be continued due to a medical condition.[6] In her motion, she placed her inability to obtain an attorney on Bruce because of undisclosed debts and other withholdings. She also objected to the motion for sanctions, claiming Bruce refused to take the two youngest children on June 1 for his June visitation in order to tamper with her preparation for trial and caused her to defy the court order to keep legal matters away from the children. The court denied this request on June 12 at 4:19 p.m., confirming trial was scheduled for the next day.

On June 12 at 4:26 p.m., Victoria filed another motion to continue, stating surgery was scheduled for that Friday, June 16, and her condition prevented her from travel. She also stated she did not have an attorney for trial that week but would if the court granted a continuance. On June 13, the court denied this motion and advised Victoria she was free to renew her motion for consideration by the trial judge since the trial was scheduled for later that same day.

On June 13, before the commencement of trial, the GAL filed her final report and Bruce filed the results of the educational assessments. The assessments

---

[6] Victoria attached the letters and notes from doctors previously sent to the court to her motions to continue. She also attached an examination record which listed a condition. However there was nothing noted about the need for surgery or a restriction from traveling.

found H.A. was average in five educational subsections and below average in two, while S.A. was average in three subsections and below average in four.

The trial was held June 13 through 16. Before beginning the trial, the court heard the pending motions. The court granted Bruce's request to prevent Victoria from calling witnesses and exhibits because she filed her lists past the trial scheduling deadline. However, the court allowed her to call witnesses relating to the educational assessments if it became necessary and relevant. The court reserved its decision on any other possible sanctions until it made its final ruling and overruled Bruce's motion to dismiss Victoria's application for rule to show cause.

During the trial, Bruce, Victoria, and the GAL testified as well as a piano teacher called by Victoria. On June 29, the court filed its written ruling, granting Bruce's application for modification. The court transferred physical care of the three youngest children to Bruce and granted Victoria visitation. Victoria appeals.

## II.    Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (quoting *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015)). "Thus, we review the district court's decision de novo." *Id.* We make our own findings of fact but "give weight to the district court's findings" particularly relating to witness credibility, however "those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties

presently before us." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2002).

## III.    Analysis

### A.    Denial of Continuances

Victoria first claims the court abused its discretion in denying her multiple requests for continuances due to a medical issue.  She contends the illness and impending surgery were beyond her control and caused her to be ill-equipped for trial since she was self-represented.

"The granting or denial of a motion for continuance is in the discretion of the trial court and will be interfered with on appeal only where there is a clear abuse of discretion."  *In re Marriage of Hatzievgenakis*, 434 N.W.2d 914, 916 (Iowa Ct. App. 1988).  "Prejudice must be shown," *id.,* and we "will only reverse if injustice will result to the party desiring the continuance."  *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996).  "This court will not find an abuse of discretion unless 'such discretion is exercised on grounds or for such reasons clearly untenable or to an extent clearly unreasonable.'"  *Edson v. Chambers*, 519 N.W.2d 832, 834 (Iowa Ct. App. 1994) (quoting *Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986)).  "[D]iscretion is abused if it is clear the judge has applied an improper standard, failed to follow established legal rules, or has based the decision on a record devoid of facts to support the decision."  *Id.*

On June 13, the district court summarized the history of Victoria's motions to continue, stating:

> On June 12, 2017, the Court denied [Victoria's] motion to continue the trial date.  At least three judges have denied [Victoria's] motions to continue the trial date.  Each time the Court has advised

[Victoria] that she must provide specific information that supports her motion. Each time [Victoria] files multiple documents that lack specificity. The Court, again, denies [Victoria's] motion to continue, filed at 4:26 p.m. on June 12, 2017, following entry of the Court's order denying [Victoria's] motion, assuming she was requesting a continuance.

Petitioner is free to renew her motion for consideration by the trial judge.

The Court notes that the trial date in this case was set following a hearing in April 2017 during which [Victoria] asserted she was available only during a limited window of time before commencement of the school year. In an effort to accommodate both parties, the Court directed that the trial commence before June 30, 2017. After the trial date was selected, a conference in which [Victoria] participated, she began filing motions to continue, claiming a medical condition that makes her unable to travel. The letters from her health care providers make reference to prepatory appointments and a procedure on May 31, 2017, but none are specific as to the nature and extent of [Victoria's] medical condition or the reason the surgery is necessary now. [Victoria's] failure to provide the information the Court needs to judge the merits of her motion, again, causes the Court to deny the motion filed on June 12, 2017 at 4:26 p.m.

The court repeatedly advised Victoria to provide specific information to support her motions to continue but she repeatedly failed to submit the documentation requested by the court. The court had set the trial date accommodating Victoria's limited window of time before the children's school year began. Because change of physical care was the primary issue for trial, the court was clearly trying to resolve where the children would live for the upcoming school year.[7] We have reviewed each of Victoria's multiple requests for continuances, and in reliance on the detailed facts set forth earlier in this opinion we will briefly address each motion.

---

[7] The court filed its ruling on the modification petition within two weeks of the conclusion of the trial.

1.      *May 24 motion*

After the parties were unable to schedule mediation on their own, the court ordered mediation for the afternoon of May 24.  On the morning of May 24, the day of the court-ordered mediation, Victoria filed a motion to continue mediation and trial.  Her stated reason was "a recent medical situation that requires doctor's care with surgery imminent.  Physician letter forthcoming."  No physician letter was filed by Victoria that day.  The court denied her motion, stating "the court has insufficient information to warrant a continuance ex parte, and no ability to provide an opportunity for hearing prior to mediation set for this date."  Victoria failed to appear at mediation on May 24.

Given the lack of information about her condition and need for care in Victoria's motion and the fact that mediation was scheduled for later that same day, we do not find the court abused its discretion in denying her request.

2.      *May 30 motion*

Victoria filed her second motion to continue mediation and trial on May 30 "due to imminent surgery as stated in her May 22nd Motion to Continue and per attached physician's letter."  The court set the motion for a telephonic hearing on June 6.

The court previously ordered Victoria to personally appear at a hearing on May 31 to show cause why she should not be found in contempt for failure to appear at the May 24 mediation.  Victoria failed to appear at the show cause hearing. The court then ordered her to explain herself during the June 6 telephonic hearing and to provide a physician's note before the hearing with more details as to the nature of her anticipated surgery.

The court denied this motion after conducting a telephonic hearing. The order after hearing stated, "The information submitted to the court in support of [Victoria]'s motion is nonspecific and fails to provide the Court with sufficient information to allow the Court to determine if [Victoria]'s motion has merit."[8]

The terminology used in the doctor's notes submitted by Victoria was broad and failed to provide the details the court requested. We find no abuse of discretion in the court's denial of this motion to continue.

3. *June 9 motion*

On June 9,[9] Victoria filed a "denial of the motion to continue & other motions," in which she again asked for a continuance of mediation, trial, and show cause hearing due to her medical condition. She also filed a number of the same doctor's notes that she provided in her earlier motions, plus a diagnostic imaging report indicating a gallstone had been discovered. Victoria also filed a purported release of information document, which seemed to direct the court to contact her doctor for more information. On June 12, Victoria filed an affidavit again requesting a continuance of mediation and trial, claiming she was in the hospital on June 1 and was not allowed to make decisions or sign documents for two days, which left her only one day to respond before the June 6 hearing. The court denied Victoria's June 9 motion on June 12 at 4:19 p.m.

We cannot say the district court abused its discretion after it repeatedly informed Victoria it needed more specific information and she repeatedly failed to

---

[8] The telephonic hearing was not reported so our record is limited to Victoria's filed documentation and the court's order.
[9] Victoria filed an amended motion on June 12 in which she added the word oppose to the beginning of the title of the motion. The rest of the motion remains the same.

comply. The firm court date had been agreed to by the parties and accommodated Victoria's schedule, the date facilitated resolution of physical care before commencement of the next school year, and it complied with Iowa courts' trial setting standards.[10] Therefore we affirm the court's denial of the motion to continue.

### 4. *June 12 motion*

At 4:26 p.m. on June 12, just minutes after the court denied Victoria's June 9 motion, Victoria filed another motion to continue. On June 13, the court denied her motion in a written ruling.[11] Like the June 9 motion, we affirm the denial of this motion.

### 5. *Renewed motion during trial*

On June 16, after three days of trial, Victoria requested a two-month continuance of the trial. She stated her surgery was scheduled for Monday (June 19) and asked for time to allow her to have surgery then resume trial. Bruce and the GAL resisted the motion. The GAL explained that she had requested but had not accomplished an expedited trial date because of her view of the urgency of resolving the modification action, and that the trial had actually commenced at the nine-month mark as required by case processing standards.

In denying the motion, the court explained the importance of complying with the nine-month case processing standard, and reviewed the motions filed by Victoria and the denials of those motions by other judges. The court explained that those judges repeatedly provided Victoria the opportunity to provide sufficient

---

[10] *See* Iowa Ct. R. 23.2(1)(g).

[11] A portion of that ruling is quoted at the beginning of the Analysis section of this opinion.

details about her condition that would allow them to determine the legitimacy of her requests for continuances and that in a review of the court file, the trial court could not find that Victoria had ever provided the information requested by those judges. Finally, the court found the a continuance could be a detriment to the children as a delay would mean the trial would resume at about the same time school would resume in Iowa and past the registration deadlines for Arizona schools. Further, the court's ruling on the modification petition would take additional time after the trial concludes, delaying the matter even further.

The court's denial of the motion was based on facts in the record and a full explanation by the court. We therefore find no abuse of discretion and affirm the denial of Victoria's renewed motion.

In summary, the district court's rulings on each of the motions to continue recited its reasons for denying the motion and frequently informed Victoria of its need for more information if it were to favorably consider such a motion. In the absence of a diagnosis, the nature of the planned surgery, or other possible pertinent information, the district court determined it did not have information upon which to independently evaluate whether her motions were sufficiently grounded in fact to overcome the rationale repeatedly cited by the court for enforcing the agreed trial date.[12] The district court did not abuse its discretion.

---

[12] We acknowledge the sensitive nature of medical information and records and do not suggest she was compelled to disclose such information. On the other hand, when she alleged such information as grounds for her motions, the burden was on her to adequately support her motions.

B.      Modification of Physical Care

Victoria claims the court made several errors relating to the modification trial and in its ultimate decision to modify custody.

1.      *Exclusion of evidence*

Victoria first claims the court erred by precluding her from presenting any documentary evidence.  Section five of the uniform trial scheduling order provided: "Ten (10) days prior to trial each party shall: a. File and exchange witness and exhibit lists and exchange pre-marked exhibits."  The last sentence provides in bold "Violation of this order may result in sanctions, including dismissal or a grant of the relief requested by the opposing party."

On June 8, Bruce filed a motion for sanctions asking the court to prohibit Victoria from calling any witnesses or introducing any exhibits at trial due to her failure to comply with the court's orders to personally appear and participate in mediation on May 24 and to complete mediation by June 2.  Further, he asked for those sanctions due to Victoria failing to file a timely witness list and failing to file any exhibit list.  Victoria filed her witness list on June 8 but never filed an exhibit list or pre-marked exhibits.  She filed proposed exhibits on June 6, 9, and 12.

Victoria objected to Bruce's requests for sanctions, blaming Bruce, his counsel and the GAL for her shortcomings.  Before commencing the trial, the court ruled Victoria could not call any witnesses except those regarding the education testing issue if it became necessary and relevant to do so.  The court also disallowed any late-filed exhibits on either side, enforcing the deadlines set.

"A district court has wide discretion in its decision of whether, or which, discovery sanction to impose."  *In re Marriage of Benson*, No. 03-1388, 2005 WL

425461, at *2 (Iowa Ct. App. Feb. 24, 2005). "A district court's order imposing discovery sanctions will not be disturbed unless the court abused its discretion." *In re Marriage of Williams*, 595 N.W.2d 126, 129 (Iowa 1999).

"Pretrial scheduling orders serve an important function in our civil justice system." *Fry v. Blauvelt*, 818 N.W.2d 123, 129 (Iowa 2012). "A scheduling order encourages pretrial management and assists the trial court in controlling the direction of the litigation" and "stimulates litigants to focus on the most germane issues in the case." *Id.* Deadlines "promote efficiency and reduce the amount of resources required to be invested in the litigation." *Id.* "The failure of a party to meet pretrial deadlines not only undermines the goals of the schedule, but also prejudices the other party, who is subject to the deadlines as well." *Id.* at 130.

"The purpose behind the disclosure requirements of the witness and exhibit lists is to assist the parties and the court in having an orderly trial free of surprises that can delay or even derailment." *Schmidt v. Eft*, No. 16-0238, 2016 WL 6637594, at * 3 (Iowa Ct. App. Nov. 9, 2016). "Exclusion should not be imposed lightly; other sanctions are available such as continuation of the trial or limitation of testimony." *Klein v. Chicago Cent. & Pac. R. Co.*, 596 N.W.2d 58, 61 (Iowa 1999). "To ensure our district courts have the tools to effectively manage pretrial conduct and control the conduct of the trial, we have recognized the inherent power of the district court to enforce pretrial orders by imposing sanctions." *Fry*, 818 N.W.2d at 130.

Well before she disclosed she had an illness, Victoria was aware of the deadlines, so she had the time and opportunity to prepare. Also, despite her illness, she prepared numerous motions after the court filed the scheduling order,

thus demonstrating she was fully capable of preparing and filing her witness and exhibit lists.

Given the litigious nature of the case and acrimonious history of the litigants, as set forth above, the district court obviously recognized the need to effectively manage the trial and the parties. Time was of the essence as the court was aware of the impending school year for the children, and given their educational deficiencies, any delay was not in the children's best interests as it would delay consistency, the ability to start the children in programs to address their deficiencies, and prepare for the school year.

"We do not utilize a deferential standard when persons choose to represent themselves." *Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995). We do not "treat [Victoria], as a pro se litigant, any differently." *Id.* Unlike the cases of *Fenton* and *Flynn*, which Victoria relies upon, this court did not enter a default judgment against Victoria. Victoria testified on her own behalf and the court allowed her to call a piano teacher who taught E.H. for approximately one and a half to two years. Additionally, a number of Victoria's proposed exhibits were already in the record as they were filed in previous motions and others. Further, the court admitted into evidence four of her proposed exhibits pertaining to the children's education. We find the court did not abuse its discretion, and therefore affirm the court's limitations on witnesses and exhibits.

### 2.     *GAL report and testimony*

Next, Victoria claims the court erred in allowing the GAL to testify and admitting her report into evidence. Victoria asks that we not consider her testimony and report in our de novo review.

The trial in this case took place in June 2017 and the court entered its ruling on June 29. The GAL's final report was offered into evidence by Bruce. Victoria objected to the admission of the report as hearsay and because the GAL was present to testify. Victoria did not object to the GAL testifying. The court noted, "I do not delegate my responsibility to make the decision in this case to the guardian ad litem. And while I will respectfully consider her investigation and recommendations, they are not in the least binding on me."

Prior to July 1, 2017, a written report of a GAL in a custody case was properly before the court if the parties had agreed to its consideration, but it could not have been considered by the court after a proper objection.[13] *See In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981).

There was no agreement by the parties that the court should consider the GAL report, and Victoria made a proper hearsay objection to the offer of the report in evidence. The court should have sustained the objection and refused to consider the report. On our de novo review we have not considered any evidence that is exclusive to the GAL report. *See In re Marriage of Strong*, No. 17-0160, 2018 WL 1863169, at *7 (Iowa Ct. App. Apr. 18, 2018) ("Insofar as statements or allegations in the GAL's report [that] were unique to the report—not testified to by

---

[13] As of July 1, 2017, Iowa Code section 598.12(1) allows the court to appoint a GAL to "represent the best interests of the . . . children of the parties." The GAL may conduct an in-person interview with the children and the parents of the children; regularly contact the children; visit the children's home; interview medical, mental-health, education, and other service providers; attend hearings and trial; and file motions and make objections. Iowa Code § 598.12(1)(a)(1)–(6). However, the GAL "shall not testify, serve as a witness, or file a written report in the matter." *Id.* § 598.12(1)(a)(6).

witnesses at the modification hearing or contained in properly admitted evidence—we review the modification of physical care without considering that evidence.").

At the trial, Victoria did not object to the GAL's testimony, so her claim the district court erred when it allowed the GAL to testify is not preserved.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

### 3.    *Burden of proof*

 Victoria argues that Bruce failed to prove a substantial change in circumstances and a superior ability to provide care, thus the court erred in transferring physical care of the minor children to Bruce.  In summary, she claims the court relied on facts that led to the 2013 modification action.

On our review, we find the court's summary of the 2013 modification was giving context to the present situation by indicating the parties' similar situations in 2013, during which each parent unilaterally behaved in ways that interfered with the other parent's opportunities to see the children and exercise visitation.  "Our precedent cautions us to exercise care in 'judging a parent based on activities which take place during a particular time frame. . . .  Instead, a better picture of a parent can be found by viewing the total circumstances, and putting isolated events into perspective.'"  *Buschbom v. French*, No. 07-1036, 2008 WL 680404, at *3 (Iowa Ct. App. Mar. 14, 2008) (ellipsis in original) (quoting *In re Marriage of Ihle*, 577 N.W.2d 64, 69 (Iowa Ct. App.1998)).

The district court was illustrating that Victoria had filed contempt charges against Bruce in 2013 because he failed to return two children after his time of

visitation ended, yet she secretly moved to Arizona without consulting Bruce and inhibited his visitation rights. In a prior order the court had warned both parties not to make such decisions in the future, but despite that warning Victoria made the decision to move to Arizona without informing Bruce until after she had left the state.

Further, the court concluded a change in circumstances occurred with Victoria moving the children to Arizona, coupled with the children's educational deficiencies. Section 598.21D provides:

> If a parent awarded joint legal custody and physical care . . . is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances.

Upon our de novo review, we agree that Victoria's move to Arizona, without consultation with or notice to Bruce until after she left the state, together with the children's ongoing educational issues is sufficient to be considered a substantial change in circumstances.

In its ruling, the district court focused on the children's educational deficiencies and each party's actions effectively denying the other their custodial rights. The court believed Bruce could offer the children superior care, finding that he seemed "to be genuinely committed to resolving their educational deficiencies," whereas Victoria "talks a good commitment, but her actions belie the sincerity of that commitment." The court was not convinced Victoria even acknowledges the children's educational issues and that once "litigation is concluded, [Victoria] will simply continue as she has in the past."

On our review of the record, we agree with the court's assessment that the issue of superior care was problematic as neither parent has put the children ahead of their own animosity toward each other. Since their 2011 decree, the parties have demonstrated their inability to communicate or agree on important matters relating to their children, leading to the court to intervene and decide such matters. Neither parent has taken the initiative to identify and take steps to address the children's clear deficiencies in their education, instead blaming the other parent for the problems. The children, including the adult children, have become the weapons through which Victoria and Bruce can attack one another, and "[t]he depth of their animosity toward each other is not lost on the children." *See Harris*, 877 N.W.2d at 441. This has resulted in many of the children taking one parent's side over the other.

While the court did not specifically identify or mention the alleged abuse in its ruling, it did hear testimony from Victoria regarding the claim. Victoria argues that one of her proposed exhibits was a letter written by H.A., which was not considered by the court. However, Victoria testified to much of its contents without objection, which the court heard. The GAL testified she was not able to corroborate any of Victoria's allegations and had no safety concerns about the two youngest children living with Bruce and even the children's therapist did not have safety concerns as the older sibling allegedly involved did not live with Bruce.

We agree no one is blameless in this matter and agree with the court's conclusion that Bruce is better suited than Victoria to minister to the needs of the children. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally,

and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007). On our review of the record, we find that Bruce is better suited to accomplish this.

Further, "[f]ostering the long-term relationship with the parent who does not have physical care is an important role of the physical-care parent." *In re Marriage of Williams*, No. 16-1527, 2017 WL 2875392, at *3 (Iowa Ct. App. July 6, 2017). Bruce testified to a willingness to foster the children's relationship with their mother, including being open to additional visitation when Victoria is in Iowa, and encouraging the children to keep in contact with their mother. Victoria did not share the same, either through her testimony or her actions.

Additionally, we find Bruce better equipped to provide some stability and continuity to the children's lives. At the time of the hearing, Bruce had worked for the same company for eight years, whereas Victoria was not employed at the time of trial and had not been employed for approximately three months. The record shows her move to Arizona was hasty and secretive, rather than a thoughtful, planned move. When she moved, the children were surprised and she had no plan for a residence and failed to provide Bruce information as to their location for a month after leaving Iowa.

In its ruling, the court found Bruce more credible and we give deference to the court's assessment of the credibility of witnesses. *Harris*, 877 N.W.2d at 440. Upon our review of the record, we see no need to depart from the court's assessments.

4.    *Conditions on visitation*

Victoria argues the visitation order placed onerous conditions on her, requiring her to move back to Iowa in order to utilize the alternate weekend visitations Bruce previously had under the 2011 decree and 2013 modification. Bruce testified he was open to Victoria seeing the children anytime she's in town.

The court modified the decree to provide Victoria visitation for four weeks during the children's summer break, one week during winter break, and one week during spring break. It also provided Victoria the opportunity to have visual contact with the children through a video conferencing service such as Skype. Additionally, Bruce was ordered to provide the children with cell phones to allow them to maintain contact with the parents. The court also stated that if Victoria were to move to within fifty miles of Bruce's residence, visitation would consist of alternate-weekend visitation. This was the visitation schedule provided by the court in the 2013 modification when both parties still lived in Iowa.

"In the eyes of litigating parents, no court-imposed visitation schedule is ever perfect." *In re Marriage of Slayman*, No. 16-1240, 2017 WL 2181865, at *5 (Iowa Ct. App. May 17, 2017). Iowa Code section 598.21D provides in cases where a parent awarded joint legal custody and physical care relocates one hundred fifty miles or more from the children's residence at the time custody was awarded, that relocation may be considered a substantial change in circumstances and if the custody order is modified, "the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact." This is what the court in this case did. The court did not require Victoria

to move back to Iowa to exercise her visitation. Instead, the court preemptively provided a visitation schedule should Victoria return to Iowa to live.

Additionally, during the course of the trial Victoria described what she thought would be a reasonable visitation schedule for Bruce if she were granted primary care: a week for fall and spring breaks, Christmas and summertime. She did not propose giving Bruce additional time for visitation if he was in Arizona. Although the district court gave her exactly the visitation schedule she thought would be reasonable if Bruce were getting visitation, we determine it is in the best interests of the children to provide Victoria an additional visitation opportunity when she is in Iowa. Therefore, we modify the court's visitation schedule to add that when Victoria returns to Iowa to visit, and gives Bruce prior notice of a minimum two weeks, she will be allowed to exercise visitation with the children in Iowa for two days with overnights.

C.     Attorney fees

Victoria asserts the court's award of trial attorney fees to Bruce was in error. "In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. "An award of trial attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion." *McKee v. Dicus*, 785 N.W.2d 733, 740 (Iowa Ct. App. 2010). Victoria does not argue the court abused its discretion, only that the award was error. We find no abuse of discretion and affirm the court's award of trial attorney fees.

Bruce requests an award of appellate attorney fees. "An award of attorney's fees is not a matter of right but rests within the discretion of the court." *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996). We decline to award attorney fees to Bruce. Costs on appeal are taxed to Victoria.

## IV. Conclusion

We find the court did not abuse its discretion in denying Victoria's motions for continuances. We conclude the court erred in admitting the GAL's report into evidence so we do not consider it in our de novo review. On our de novo review, we agree with the court's findings of a substantial change in circumstances and Bruce's ability to offer superior care. We therefore affirm the district court's ruling on Bruce's request to modify physical care. We modify the visitation schedule to allow Victoria visitation when she is in Iowa, as set forth above. We find no abuse of discretion and affirm the court's award of trial attorney fees to Bruce. We do not award appellate attorney fees to Bruce.

**AFFIRMED AS MODIFIED.**